## United States v. Geisenheimer & Co. (No. 1597).[1]

CONTAINERS OF "GAS, LIQUIDS, OR OTHER MATERIAL"—DAMAGE AFTER IMPORTATION.

Strong sheet iron drums containing sulphide of sodium, which, when in proper condition, will admit of their contents being removed without destroying them or their usefulness as containers, are dutiable under paragraph 127, tariff act of 1913, as "* * * cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material;" and this tariff status is not affected by their having, since importation, become damaged so that the removal of their contents necessitates their destruction.—United States v. Garramone (2 Ct. Cust. Appls., 30; T. D. 31577) and United States v. Braun Chemical Co. (2 Ct. Cust. Appls., 57; T. D. 31596) distinguished.

United States Court of Customs Appeals, January 28, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38228.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In addition to the duty imposed on sulphide of sodium imported at the port of Philadelphia, the collector of customs subjected the metal drums containing the chemical to a duty of 20 per cent ad valorem under that part of paragraph 127 of the tariff act of 1913, which reads as follows:

127. * * * Cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty, * * * 20 per centum ad valorem.

The importers made no objection to the duty imposed upon the sulphide of sodium, but protested that the metal drums were free of duty inasmuch as they were the usual containers of merchandise subject to a specific and not to an ad valorem rate of duty.

On the evidence adduced at the hearing the board found that the metal drums were the containers in which sulphide of sodium was usually imported and that it was necessary to cut out the heads of the drums in order to remove the contents, thereby rendering them unfit for further use as containers. The board having found that the containers were of that character apparently concluded that they were of the same class as those considered by this court in United States v. Garramone (2 Ct. Cust. Appls., 30; T. D. 31577) and United States v. Braun Chemical Co. (2 Ct. Cust. Appls., 57; T. D. 31596), and therefore sustained the protest of the importers. The Government appealed.

[1] Reported in T. D. 36144 (30 Treas. Dec., 203).

The containers passed upon in United States *v.* Garramone were ordinary tin cans containing tomatoes and tomato sauce. This court found that once the contents were removed from the tin cans they were unfitted for further use as containers and were in effect rubbish; that they had no appreciable value; that they did not enter into or become a part of the trade or commerce of the country or compete with articles manufactured here; that their value was not considered in commercial transactions; and that they were not the cylindrical or tubular tanks or vessels provided for by paragraph 151 of the tariff act of 1909. In United States *v.* Braun Chemical Co., the court had under consideration cylindrical iron drums which were brought into the country as containers of chloride of magnesium. In that case it was shown by the evidence that the chloride of magnesium was heated and poured into the drums and permitted to solidify. That method of filling the drums, and the fact that the drums would fall apart if sufficient heat were applied to permit of the pouring out of the contents, made it necessary to cut the drums in two in order to remove the chloride of magnesium. Apparently, therefore, the drums were not of very substantial construction and the court found that their usefulness as containers ended with the withdrawal of their contents and that thereafter it did not appear that they were devoted to any useful purpose or that they were adapted thereto or that they had any value.

The evidence submitted to us by the record on this appeal does not warrant us in saying that the drums under discussion are of the kind considered in either of the cases just mentioned. According to the testimony, the drums here involved are made of sheet iron and are about 3 feet high by 18 inches "wide" (in diameter?). They weigh, when filled with sulphide of sodium, about 500 pounds, and from that fact and the material employed in their construction we think it may be fairly deduced that they are strongly built and durable in character. It is apparent from the testimony that there is nothing in the make-up of the drums themselves or in their relation to the goods contained by them which necessarily requires their destruction in order to secure the contents or necessarily precludes their further use as containers.

William Stopper, United States sampler of general merchandise, testified on the part of the Government that the invoices covering the sulphide of sodium imported in the drums now in controversy were referred to him for the purpose of taking samples. He stated that in the performance of his official duties he took samples of the importation and saw all of the drums covered by the invoices. He said that in the head of the drums there was a plate held in place by turnbuckles which could be removed by turning the turnbuckles three-quarters way round. He positively declared that he took

samples of the goods by removing the plates from 14 of the drums, and that after taking the samples he returned the plates to place without damaging them or the drums in any way. The testimony of the Government witness that the drums could be opened without damage either to the drum or the head was contradicted by one witness, H. Carrol Brooke, vice president of the Nicetown Dye Works, to which establishment it appears part of the importation was sold. Brooke said that the lids of the drums sold to his company were put on by a machine and clamped down or "doubled over and clamped down," and that the sulphide of sodium could not be removed without cutting out the lids and destroying the containers. Mr. Brooke's testimony, however, is at variance with that of Robert B. Ely, Philadelphia manager of the importers, and George H. Undy, a salesman in the employ of the importers. These two witnesses testified that the head of the drum was closed by a lid about 5 or 6 inches across, which was pressed into the top, and that unless rusted the lid could be removed without destroying the drums. Ely testified that the drums containing the sulphide of sodium sold to the Nicetown Dye Works were so crushed and rusted that the contents could not be removed until the heads had been cut out with a hammer and chisel, and that this manner of opening the drums resulted in destroying the head and thereby rendered impossible the further use of such drums as containers. Brooke stated that these same drums after opening were thrown on the ash heap, but that "you could put anything in them that you would choose to." No testimony was adduced showing when the drums had been crushed or become rusted, and from all that appears in the record such crushing and rusting may have occurred subsequent to importation. It appeared from the testimony of Brooke that drums with removable heads were salable and that an allowance was made to the purchaser with return of the drums to the seller.

With this as the state of the record, we think it is established by a clear preponderance of the evidence that the drums in question are of durable construction; that neither the nature of their construction nor their relation to the merchandise contained by them requires their destruction in order to remove the contents; that unless the drums have been rusted or crushed it is not necessary to cut them open; and that, barring injury resulting from accident or mischance, they are available for repeated use as containers and have a merchantable value as such. It is evident that drums of that kind can not be classed with the tin cans involved in the case of United States v. Garramone, nor with the iron drums passed upon in the case of United States v. Braun Chemical Co., from which the contents could not be removed except by cutting the drums in two.

In our opinion the finding of fact upon which the board based its ruling sustaining the protest was against the evidence, and we must therefore hold that the drums are cylindrical or tubular tanks or vessels, dutiable under paragraph 127 of the tariff act of 1913, as assessed by the collector.

Whether paragraph 127 can be applied to metal drums which *prior to importation* have been so crushed, rusted, or otherwise damaged as to render them commercially unfit for further use as containers is not in issue in this case and is therefore not decided.

The decision of the Board of General Appraisers is *reversed.*