DIANA ET AL. *v*. UNITED STATES (No. 2324).[1]

CONSTRUCTION, SUBSECTION (e), SECTION 403, TITLE IV, EMERGENCY TARIFF ACT OF 1921—CONFLICT OF LAWS—CURRENCY CONVERSION.

With reference to merchandise brought into the country before the enactment of the emergency tariff act of 1921, some entered before and some after such enactment, but all withdrawn and duty paid after, subsection (e), section 403, Title IV, emergency tariff act of 1921, directs that the foreign invoice currencies be converted into United States money in accordance with section 25, tariff act of 1894, and R. S. 2903, and does not permit such conversion to be made in accordance with subsections (a), (b), and (c) of section 403 of the emergency act.

United States Court of Customs Appeals, June 24, 1924

APPEAL from Board of United States General Appraisers, Abstract 46217

[Affirmed.]

*Allan R. Brown* for appellants.
*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Pelham St. George Bissell*, special attorneys, of counsel), for the United States.

[Oral argument March 19, 1924, by Mr. Brown and Mr. Lawrence]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

In these cases the merchandise covered by the protests arrived within the limits of the port with intention to unlade before May 27, 1921.

So much of the importations as are involved in one protest were entered for warehouse before the emergency tariff act of 1921 took effect, none of which was withdrawn from customs custody nor duty paid until after said act became effective.

---

[1] T. D. 40295.

As to that part of the importations covered by the other protest, it was entered for consumption June 1, at which date it was withdrawn from customs custody and duty paid.

The emergency act provided that it should take effect on and after the date following its passage and remain in force for the period of six months, the date of its passage being May 27, 1921.

The only question here is whether the currency of the invoices should be converted into the money of the United States under the method in force prior to the time the emergency tariff act took effect or under the provisions of that act.

Subsection (e) of section 403, Title IV, of the emergency act provides that:

Section 25 of such act of August 27, 1894, as in force prior to the enactment of this act, and section 2903 of the Revised Statutes, shall remain in force for the assessment and collection of duties on merchandise imported into the United States prior to the day of the enactment of this act.

Section 25 of the act of August 27, 1894, relates to the ascertainment of the values of foreign coins as expressed in the money of the United States and the proclaiming thereof by the Secretary of the Treasury, and section 2903 of the Revised Statutes authorizes the President to establish regulations for estimating duties on merchandise imported into the United States when the original cost thereof is exhibited in the depreciated currency of a foreign government.

The reference in subsection (*e*) to the two said statutes, which were in force when the subsection was enacted, and the provision that they should remain in force for the assessment and collection of duties on merchandise imported prior to the date of the enactment of the emergency act, clearly indicates that it was the intention of Congress that they should govern such assessment and collection on all such merchandise.

The conversion of the currency of the invoices of these importations was made pursuant to these two statutes, and this action was upheld by the Board of General Appraisers.

Importers claim that such conversion of currency should have been made under subsections (*a*), (*b*), and (*c*) of section 403 of the emergency act which it is unnecessary to refer to further than to say that they amend section 25 of the act of August 27, 1894, and provide that "for the purpose of the assessment and collection of duties on merchandise imported into the United States on or after the day of the enactment of this act," the conversion of foreign currency shall be made as in the act itself provided.

If the merchandise in these cases was *imported* on or after May 27, 1921, the importers are right in their contention. If it was imported before that day, the judgment below must be affirmed.

The determination of this question rests upon the meaning to be given to the word "imported."

Importer cites and relies upon Constance v. United States (11 Ct. Cust. Appls. 435; T. D. 39440); Vandegrift v. United States (9 Ct. Cust. Appls. 112; T. D. 39778); United States v. Cronkhite Co. id. 129; T. D. 37980); the Five Per Cent cases (6 Ct. Cust. Appls. 521; T. D. 35508), and some other authorities which we do not deem necessary to mention.

The meaning of the word "imported" with relation to statutes providing for importation of foreign merchandise and the assessment and collection of duties thereon has received much attention by the courts and administrative officers.

The invariable conclusion has been that, in its ordinary statutory sense, the word "importation" means bringing merchandise into this country from the outside with intention to unlade, and that "imported" in like manner, when applied thereto, means merchandise to which that condition or status has attached. We cite a few cases upon that subject: United States v. Vowell (9 U. S. 368); Meredith & Ellicott v. United States (38 U. S. 486); Marriott v. Brune et al. (50 U. S. 619); United States v. Burr (159 U. S. 78); Cunard S. S. Co. v. Mellon (262 U. S. 101).

These cases are authority for the universally adopted rule that tariff duties on such merchandise shall be taken at the applicable rates provided therefor under statutes in force at the time of such importation, unless Congress has indicated a different intent.

There is another line of cases that clearly recognizes that Congress may declare, by statute designed to operate retrospectively, that merchandise which has been previously imported but is still in customs custody at the time a given enactment becomes operative shall be subjected to the duties imposed by the subsequent statute, and whenever the subsequent statute clearly shows such intent on the part of Congress full effect will be given thereto.—Hartranft v. Oliver (125 U. S. 525); Fabbri v. Murphy (95 U. S. 191); United States v. Goodsell Co. (84 Fed. 439); Mosle v. Bidwell (130 Fed. 535). As recognizing and applying the same principle, consult American Sugar Co. v. United States (202 U. S. 563); Faber v. United States (221 U. S. 649); United States v. Grossfield (1 Ct. Cust. Appls. 189; T. D. 31218).

It is confidently asserted, however, that no case can be found where a statute has been given such retrospective effect unless the congressional intent so to do is apparent.

Section 29 of the tariff act of August, 1909, paragraph Q of section 4 of the act of October, 1913, and section 319 of the act of 1922 are the latest illustrations of such legislative provisions which are but the continuance of a like policy adopted in previous tariff acts.

Much reliance is placed by importers on the opinion of this court in United States *v*. Cronkhite, supra. In that case, after disposing of the real issue upon the theory that the merchandise under consideration was dutiable under paragraph Q of the act of 1913, although previously imported, the decision arguendo proceeded to consider what would be the dutiable status of the importation if said paragraph Q were not applicable, and it was said that even in such a case the duties provided in the subsequently enacted statute would apply to merchandise theretofore imported. In a sense this discussion was obiter, but when the authorities relied upon to support it are consulted it will appear in effect that in each case the statutes passed upon and held applicable provided in terms that the duties thereunder should apply to merchandise in customs custody, and the obiter discussion, therefore, must be understood with that limitation. Our opinions in the Vandegrift and Five Per Cent Cases must be likewise understood.

In the case at bar we find no warrant for holding that Congress intended that the provisions of the emergency act of 1921 as to the conversion of currency should apply to merchandise brought from a foreign country into this with intention to unlade before the act took effect, even though in customs custody. Subsection (*e*) indicates to the contrary, and subsections (*a*), (*b*), and (*c*) confirm the same conclusion.

We are of opinion that the word "imported" as used therein should be given its ordinary meaning.

The judgment of the Board of General Appraisers is *affirmed*.

Presiding Judge MARTIN and Judges BLAND and HATFIELD specially concur in the judgment of affirmance, on the sole ground that the provisions of the emergency act clearly indicate that the conversion of the currency of invoices of merchandise brought into this country from the outside with intention to unlade prior to the date said act took effect was expressly directed by Congress to be performed under the provisions of existing statutes, and not according to the new method provided for in said act.