CASAZZA & BRO. *v.* UNITED STATES (No. 2598) [1]

1. CONFLICT OF LAWS—GOODS IN BOND AT INSTITUTION OF NEW ACT—IMPORTATION.

For all dutiable purposes, goods remaining in bond after the institution of the Tariff Act of 1922, with duties unpaid, became subject to that act. Under such circumstances, the time of importation is the time of withdrawal for consumption. Consequently, the right granted to importers by section 557 of said act to have goods in bond destroyed to avoid paying duty applies to such goods.

2. PARAGRAPH 812, TARIFF ACT OF 1922—LOSSAGE ON LIQUORS.

Paragraph 812, Tariff Act of 1922, governing allowance for breakage, leakage, or damage on intoxicating liquors, applies only to such in transit and not to such in bonded warehouse.

3. SECTION 563, TARIFF ACT OF 1922—"ALLOWANCE FOR LOSS."

That portion of section 563, Tariff Act of 1922, authorizing abatement or refund of duty for casualty, presupposes withdrawal; and it is not easy to see how it may be held to apply to goods never withdrawn from bond; for, if such are destroyed under section 557, no duties ever accrue against them.

---

[1] T. D. 41481.

4. ARTICLES 309 AND 311, CUSTOMS REGULATIONS 1923—LOSS IN BOND—
    EVAPORATION ALLOWANCE FOR LIQUORS.

Article 309, Customs Regulations 1923, forbidding abatement or allowance of duties on account of damage, loss, or deterioration in warehouse, and article 311, forbidding allowance for deficiency of liquors above that therein specified for evaporation, apply only to withdrawals for export, and not to goods destroyed under section 557, Tariff Act of 1922.

5. EQUITABLE ESTOPPEL.

As to wine warehoused under the tariff act of 1913, the original gauge being good for reliquidating under the act of 1922, should also have been good when the wine was destroyed under section 557 of that act.

6. WINE DESTROYED—LOSSAGE IN BOND.

Wines were bonded under the 1913 act, reliquidation on the original gauge had under the 1922 act, and application made for destruction under section 557 of the 1922 act of the remaining casks, from which no withdrawals had been made. Duty can not be collected on deficiency shown by regauge at the time of destruction.

7. PRACTICE AND PROCEDURE—ERROR MUST BE ASSIGNED.

The Government, in this court on importers' appeal, can not complain that the court below should have sustained its motion to dismiss.

## United States Court of Customs Appeals, March 27, 1926

APPEAL from Board of United States General Appraisers, Abstract 49025

[Reversed.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.
*William W. Hoppin* and *Charles D. Lawrence,* Assistant Attorneys General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

[Oral argument December 18, 1925, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importers, V. Casazza & Bro., entered for warehouse at the port of New York, on January 24, 1921, 50 casks and 31 barrels of wine. This wine was duly gauged on February 2 thereafter, and the warehouse bond of importers charged with the amount of duties thereon, under the provisions of the tariff act of October 3, 1913, and entry was completed March 14, 1921. In gauging the wine, the gauger numbered each cask and barrel and made his report, showing the amount of wine contained in each numbered cask and barrel. Various withdrawals for consumption were made thereafter. A portion of the wine remained in warehouse until after the Tariff Act of 1922 became effective. Thereafter, on November 14, 1923, the collector reliquidated the entry under paragraph 804 of said Tariff Act of 1922, and assessed duties thereunder upon the amount of wine

[1]T. D. 41485

as showed by the gauger's report on original entry. At some later date, the exact date not being shown by the record, but within the warehousing period of three years, the importers filed with the collector an application for the destruction of the five casks and barrels of wine, giving the gauger's numbers thereof, remaining in the warehouse, under section 557 of said Tariff Act of 1922. It is conceded that no wine had ever been withdrawn from these five casks and barrels by the importers.

The collector thereupon caused the wine in these casks and barrels to be again regauged, destroyed what remained, and called upon the importers to pay duties upon the amount represented by the difference between the amount actually destroyed and that originally imported in these particular casks and barrels, according to the rates fixed by said paragraph 804. The importers paid the amount thus demanded by the collector and the bond was canceled May 13, 1924. On the same day the importers filed their protest against the decision of the collector, which was overruled by him. The protest was then duly forwarded to the Board of General Appraisers, which, after due consideration, sustained the decision of the collector. From that judgment the importers appeal.

The court below, in its decision, said, in part:

The result reached by the collector is, in our judgment, correct, but his reasoning rather erroneous. As the entry was made under the act of 1913 and no claim was made or supported by evidence under section 244 of the act of 1913, the collector could not assume and allow for breakage or leakage. Neither did the law at the time of the entry authorize the destruction of such merchandise and the consequent relief to the importer from duty. The importer has already received more than he is entitled to receive. He should have been required to pay the entire amount of the liquidation, to which he did not object.

It is therefore evident the court rendered its judgment on the theory that the provisions of the Tariff Act of 1922 did not apply in this instance. That view, we believe, is erroneous. These goods were in bonded warehouse, and so remained until the Tariff Act of 1922 became effective. The last named act provided:

SEC. 319. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty upon the entry or the withdrawal thereof.

SEC. 557. STORABLE GOODS—WAREHOUSE PERIOD—DRAWBACK.—Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchan-

dise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation without the payment of duties thereon, or for transportation and rewarehousing at another port: *Provided*, That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years.    * * *

For all dutiable purposes, therefore, it is plain Congress intended goods remaining in bonded warehouse after September 21, 1922, with duties unpaid thereon, to be subject to the provisions of the Tariff Act of 1922. We have, in such cases, held on many occasions, that the time of importation must be deemed to be the time of withdrawal for consumption and that, to this extent at least, the rights and remedies of the parties must be determined by the provisions of the new law. *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290; *Kee Co.* v. *United States*, 13 Ct. Cust. Appls. 105; T. D. 40943.

If, therefore, the goods had been withdrawn for consumption after September 21, 1922, it must have been under the provisions of the Tariff Act of 1922. It remains to be seen whether any of the other provisions of that act also apply to the goods in question. The importers sought to have their goods remaining in bonded warehouse destroyed under the provisions of section 557 of said act. The material portion of that section is as follows:

Merchandise entered under bond, *under any provision of law*, may be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and the consignee relieved of the payment of duties thereon.

The italics are ours. It will be at once noted that the importers may have the goods destroyed under this act, irrespective of the law under which they were brought into the customs jurisdiction of the country. Congress has here, in exact and unambiguous language, extended the remedies provided in this section to all importers whose goods were in bonded warehouse and within the bonded period when the Tariff Act of 1922 became effective.

If, then, the importers might file their application under section 557, what must be destroyed to cancel their bonded obligation? The importers argue that they are entitled to assume that the Government has in its custody what they originally delivered to it and that when the Government destroys what it has, then the importers have done all they can do, and should be discharged as to their bond. On the other hand, the Government argues it can cancel the obligation only to the extent of the goods remaining in its hands at the time of destruction and that it can not make allowances therefrom, because of the provisions of paragraph 812 and section 563 of the Tariff Act of 1922, which are as follows, so far as material:

PAR. 812. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that

when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or other-wise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in a bonded warehouse: *Provided,* That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores undergoing appraisal, or while in transportation under bond from one port to another, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry, and before the same has been landed from the importing vessel or vehicle, such board is hereby authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid.

It must appear, on inspection of said paragraph 812, that this provision was formulated by Congress for the purpose of taking care of losses which might occur in transporting the goods into the country, and was not intended to apply to losses in bonded warehouse. Section 563 is a provision for an abatement or allowance to be made upon duties which are collected or may be collected, and presupposes a withdrawal of the goods for some purpose. It is not easy to see how this provision may be held to apply to cases where the goods are not withdrawn, but are destroyed and where no duties ever accrue. For, if the goods are in bond, and never withdrawn, and are destroyed under section 557, then no duties ever accrue against them. There is an obligation upon a bond, which obligation becomes canceled upon the destruction of the goods, and nothing more.

But, it is argued, the collector, having assessed duties, according to the law, upon the number of gallons of wine imported, could allow only for the gallons he actually destroyed, and the Government cites articles 309 and 311 of the Customs Regulations of 1923 in support of this position. Those articles are as follows:

ART. 309. *Withdrawal before liquidation—Damage, etc.*—Except when the appraiser's return shows no advance in value or change in rates, no withdrawal for export shall be allowed before the liquidation of the warehouse entry, or a special liquidation of such items as refer to the merchandise exported, and there shall be no abatement or allowance of duties on account of damage, loss, or deterioration of merchandise while in warehouse, except as provided by statute.

ART. 311. *Liquors, regauge.*—Liquors in casks will be regauged on withdrawal for exportation, and duty will be collected on any deficiency from the original gauge in excess of the following allowance for evaporation:

One per centum for the first six months or less after the date of entry.

Two per centum after 6 months and not over 12 months.

Three per centum after 12 months and not over 18 months.
Four per centum after 18 months and not over 24 months.
Five per centum after 24 months and not over 36 months.

It is manifest, on examination of these provisions, that they were intended to apply to cases where goods are withdrawn from bonded warehouse for export. It is significant that there is no like provision of the Customs Regulations for goods to be destroyed under section 557.

We can not escape the conviction that the procedure adopted here by the collector is not doing complete justice to these importers. The collector did not regauge the wine when he reliquidated under the Tariff Act of 1922, but took the original gauge as correct. Upon what theory, then, can he justify his act in regauging it before he destroyed it? If the gauge is good for duty purposes, when money is to be taken from the purse of the importers, why is it not good when the importers seek to abandon and destroy their goods? Our customs laws, necessarily highly technical and calling for a close construction, are also intended, so far as may be possible, with due regard for the purposes for which such laws are enacted, to be just and fair. We have, on several occasions, suggested that all the Government ought to seek and obtain, is the duties which justly accrue, according to law, upon the goods which enter into the commerce of our country. Here the importers did all they could to comply with the law, and their bond should have been canceled upon the destruction of their goods by the collector.

A very similar question arose in T. D. 38664, 39 Treas. Dec. 179. There, liquors were gauged and placed in bonded warehouse. When withdrawn for export, they were regauged and it being found more than the ordinary outage was gone, the importer was required to pay duties on the amount wanting, over the outage. General Appraiser Adamson there held that inasmuch as the original puncheons were exported, without any of the contents thereof having been withdrawn, it was unlawful to impose duties on the wantage.

In this connection it may be suggested that, if the wine in question had been imported in bulk and withdrawals had been made from the entire amount, then a different question might be presented. But here the original packages imported were intact and identified. They had been continuously in customs custody and, if there was a wantage above the ordinary allowance, it could not be attributed to any act of the importers.

The Government argues here that its motion to dismiss the protest should have been allowed. No cross errors are assigned here by the Government, bringing that matter properly before us and it will therefore not be considered.

For the reasons given the judgment of the Board of General Appraisers is *reversed*.