HENRY HOLLANDER CO. *v.* UNITED STATES (No. 3834)[1]

[1] T. D. 47632.

United States Court of Customs and Patent Appeals, March 25, 1935

B. A. Levett for appellant.

Joseph R. Jackson, Assistant Attorney General (Charles D. Lawrence, Special Assistant to the Attorney General, Thomas J. Canty and John F. Kavanagh, special attorneys, of counsel) for the United States.

[Oral argument December 12, 1934, by Mr. Levett and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding appellant not entitled to a refund of 99 per centum of the duties paid on 638 cases of Scotch whiskey imported at the port of New York on November 12, 1920, and December 9 and 21, 1920, and entered for warehousing on those dates. Duties provided by the Tariff Act of 1913 were paid on the merchandise on September 21, 1922, although no permit of delivery was issued and the merchandise remained in bonded warehouse until June 13, 1924, when it was removed and exported under Government supervision.

It appears from the record that beginning December 29, 1922, appellant made several attempts to secure an "export permit" from the Prohibition Department (required under the law existing at that time), in order that it might withdraw the goods for exportation to a foreign country; that these attempts were informal and ineffectual; and that it was not until June 7, 1924, that the Prohibition Department was satisfied that the whiskey was to be exported for non-beverage purposes, and the "export permit" issued.

The refund of duties was refused by the collector, because, as stated in his report—

The claim for drawback of duties paid on the liquors in question was denied for the reason that neither a prohibition export permit, nor the drawback entries were filed within the three-year warehouse period fixed in Section 557, Act of 1922, and Article 953, Customs Regulations of 1923.

The merchandise was imported in November and December. 1920, and exported June 13, 1924. Note herewith special report of the Deputy Collector in charge of the 6th (Drawback) Division of this office, copies of Bureau of Customs letters dated April 23, December 21, 1931, and April 14, 1932, the drawback and import entries.

The protest was received within the statutory time.

PHILIP ELTING,
Collector.

We deem it unnecessary to quote the various evidentiary reports and affidavits relative to the issues. The salient facts have been stated.

Counsel for appellant contends that the merchandise was exported within three years from the date of its importation, and that, therefore, appellant is entitled to the benefit of the provisions of section 557 of the Tariff Act of 1922, which were in effect at the time of exportation.

SEC. 557. STORABLE GOODS—WAREHOUSE PERIOD—DRAWBACK.—Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation without the payment of duties thereon, or for transportation and rewarehousing at another port: Provided, That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years. Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years after the date of importation for exportation, or for transportation and exportation, under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, 99 per centum of the duties thereon shall be refunded.

Merchandise entered under bond, under any provision of law, may be destroyed, at the request and at the expense of the consignee, within the bonded period under

customs supervision, in lieu of exportation, and the consignee relieved of the payment of duties thereon.

It is further contended by counsel for appellant that, by virtue of the decisions of this court, merchandise, entered for warehousing, is not *imported* until a permit of delivery has been issued, and it has been withdrawn for consumption; that if the principles announced in those decisions are not applicable in the case at bar, importation of the involved merchandise was not completed until the duties were paid thereon; and that as the goods in question were exported within three years from the date the duties were paid, appellant is entitled to relief.

In the case of *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, this court reviewed numerous authorities on the subject, and held that merchandise covered by the provisions of section 319 of the Tariff Act of 1922, was dutiable in accordance with those provisions, and that consequently the date of importation—

must be deemed to be the time of withdrawal for consumption and that, to this extent at least, the rights and remedies of the parties must be determined by the provisions of the new law.

The authorities were also reviewed in the case of *Stone & Downer, et al.* v. *United States*, 19 C. C. P. A. (Customs) 259, T. D. 45388.

Section 319, *supra*, so far as pertinent, reads:

SEC. 319. That on and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof: * * *

Similar provisions were contained in paragraph Q of section IV of the Tariff Act of 1913.

Generally, however, and unless the contrary clearly appears, the word "importation" means "the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052, and cases cited; *Cunard S. S. Co.* v. *Mellon*, 262 U. S. 100.

It will be observed that section 557, *supra*, provides that certain merchandise subject to duty may be entered for warehousing and placed in a bonded warehouse; that it may be withdrawn—

at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal,

or it may be withdrawn for—

exportation * * * without the payment of duties thereon;

and that—

the total period of time for which such merchandise may remain in bonded ware¬
house shall not exceed three years.

The section further provides that merchandise such as that here
involved—

upon which the duties have been paid and which shall have remained continu-
ously in bonded warehouse or otherwise in the custody and under the control of
customs officers, may be entered or withdrawn at any time within three years
after the date of *importation for exportation*, * * * under such regulations
as the Secretary of the Treasury shall prescribe, and upon such entry or with-
drawal. 99 per centum of the duties thereon shall be refunded. (Italics ours.)

It will be observed that the statute provides first, that goods upon
which the duties have not been paid may be entered for consumption
or exportation, within three years after the date of their *importation*,
and second, that goods upon which duties have been paid may be
"entered or withdrawn" for exportation, with the benefit of draw-
back, within three years after the date of their *importation*.

It is clear, we think, that the Congress used the term "importation"
in section 557, *supra*, in the sense in which it is generally used in
tariff statutes; that is, the "bringing of goods within the jurisdictional
limits of the United States with the intention to unlade them," except
that if merchandise provided for therein was thereafter entered for
consumption, it was subject to the duties provided by the tariff act
then in force. Any other interpretation of that term would result in
making the three year limitation of section 557 wholly ineffective.

Obviously, if counsel for appellant is right, and the importation of
the involved merchandise was completed when the duties were paid,
rather than when it was entered for warehousing, it was imported
under the Tariff Act of 1913, and the importer's remedies are pro-
vided for under that act. *Woolworth Co.* v. *United States*, 13 Ct.
Cust. Appls. 176, T. D. 41037. In that event, the Customs Court,
and likewise this court, was without jurisdiction in the premises,
regardless of the question of whether authority to determine issues
of this character was conferred upon such courts by paragraph N of
the Tariff Act of 1913, because the provisions of that paragraph
required that protests be filed within thirty days from the date of
the decision of the collector.

It appears from the record that the involved protest was filed July
11, 1931; that the involved entries were liquidated May 13, 1931;
and that, therefore, the protest was filed more than thirty days after
the entries were liquidated.

If it be assumed, however, that the rights and remedies of appellant
are provided for in the Tariff Act of 1922, and that appellant had
sixty days from the date of liquidation in which to file its protest,
then we must hold that the involved merchandise was not "entered

or withdrawn" for exportation within three years after the date of its importation; that is, from the time it was imported and entered for warehousing, to wit, November 12, and December 9 and 21, 1920. This holding is, in our opinion, in accordance with the plain meaning of the provisions of section 557, *supra.*

But, it is argued by counsel for appellant that if the word "importation" in section 557, *supra,* has reference to the time when the merchandise was brought within the jurisdictional limits of the United States and entered for warehousing, then, as appellant had made repeated attempts to satisfy the Prohibition Department that the involved whiskey was to be used for non-beverage purposes in the country to which it desired to export it, it complied with the spirit, if not the letter, of the law; that "the regulation of the Prohibition Department requiring proof of the non-beverage use of the merchandise in the country to which it was to be exported, was unreasonable, impossible of compliance and prohibitive; was not warranted by nor within the intent of the law, and was therefore illegal, void, and of no effect"; that, although appellant did not file a "so-called withdrawal for export entry" with the collector of customs within the time required by law, it did not do so because it had been informed by the collector that an export entry would not be accepted until appellant received and presented an "export permit" from the Prohibition Department; and that, therefore, the fact that it did not file a formal export entry, and, accordingly, did not receive a permit of delivery for export, during the period of time provided in section 557, *supra*—three years, does not preclude the granting of the relief asked by appellant.

We think it is sufficient to say that the eighteenth amendment to the Constitution, together with section 3, title II of the National Prohibition Act (41 Stat. 305), prohibited the exportation of intoxicating liquor, except for non-beverage purposes; and that section 3 of the prohibition act provided that the provisions thereof should be "liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

It is conceded that under the Treasury regulations in force during the period that appellant's goods were in warehouse under bond and in the custody of the customs officials, it was incumbent upon one who desired to export intoxicating liquors to first establish to the satisfaction of the Prohibition Commissioner that the exportation of such liquors was for non-beverage purposes, before they could be withdrawn for exportation to a foreign country.

In view of the plain language of the eighteenth amendment then in force, and the law enacted for the purpose of carrying out its provisions, we deem it unnecessary to say more than that it is obvious that a regulation requiring the submission of evidence satisfactory to the

Prohibition Commissioner that intoxicating liquors formerly imported into the United States, and which it was desired to export from the United States, were to be used for non-beverage purposes, was not only reasonable but was required by the Constitution and the law enacted in pursuance thereof.

Furthermore, it may be said that there is absolutely no evidence of record to establish that either the Treasury Department or the Prohibition Department acted arbitrarily, or in violation of the law.

Accordingly, we are of opinion that whether appellant's remedy was under the Tariff Act of 1913 or the Tariff Act of 1922, an issue which need not be, and, therefore, is not, decided here, appellant is not entitled to a refund of duties, as claimed in its protest.

The judgment is *affirmed*.