ALEX. D. SHAW & Co. *v*. UNITED STATES (No. 3043[1])

United States Court of Customs Appeals, June 11, 1928

*Allan R. Brown* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

[Oral argument May 9, 1928, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Four importations of whisky were made by appellant under the Tariff Act of October 3, 1913. on various dates from October 21, 1920, to July 18, 1921. They were, on importation, entered for warehousing. As the case was originally heard by the Customs Court, another protest, No. 169506–G, was involved. This protest, however, was abandoned on the trial, overruled by the Customs Court, and no appeal was prayed therein.

On August 18, 1923, upon application of the importer, permission was granted by the Secretary of the Treasury to repack 627 barrels of imported whisky, in said bonded warehouse, under the authority of section 562 of the Tariff Act of 1922, the collector being directed to cause a gauge of said "casks in their present condition," to be made before repacking. In March, 1925, acting under said permit, 401 barrels of the whisky involved in protest 169505–G were so repacked into 271 barrels.

This liquor, when imported, was gauged and amounted to 15,839.5 gallons. It was again regauged in January, 1925, and showed 12,783.04 gallons. After being rebarreled it was again gauged in March, 1925, and showed a further loss of 48.80 gallons. In April, 1925, permission having been received from the prohibition department, 169 of these refilled barrels, containing 7,975½ gallons, were exported, leaving the remaining 102 barrels in warehouse, under bond. At the time this whisky was exported a credit was given to the importer, on its warehouse bond, for the amount exported, and a further

allowance of 787.50 proof gallons for outage on account of evaporation, under article 311 of the Customs Regulations of 1923. Duty was then assessed against the excess outage remaining, or 836.30 gallons, at $2.20 a gallon, a total of $1,839.86, which was paid by the importer April 20, 1925, and against the payment of which he duly protested on June 10, 1925.

In the goods covered by protest No. 160927–G, 43 casks and 400 cases of distilled spirits were imported. Before the enactment of the Tariff Act of 1922, 400 cases and 1 cask were withdrawn and duty paid. On March 18, 1924, an application was made to repack the contents of 41 casks in 37 casks. The 43 casks, when imported, gauged 5,291.5 gallons. On a regauge, before repacking, on March 14, 1924, the 41 casks repacked gauged 4,460. After repacking, the 37 casks were again gauged. The importer was then given credit for an outage of 5 per cent on the imported quantity, and for the quantity exported, and duty was collected on the excess outage at $7.20 a gallon, which duty, amounting to $1,580.81, was paid March 19, 1924. The protest was filed April 3, 1924.

The goods involved in protest No. 161035–G consisted of 5 hogsheads of whisky, gauged at 316 proof gallons, at importation. One of these casks was withdrawn and duty paid thereon on March 31, 1921. The remaining goods, originally gauged at 255 gallons, were also repacked in bonded warehouse in April, 1924, being regauged both before and after repacking. Each gauge showed 187 gallons. An allowance of 5 per cent for outage was made, and duty was collected on the excess outage at $7.20 a gallon before exportation. The duty amounted to $555.95 and was paid April 4, 1924. The importer protested April 17, 1924.

The goods involved in protest No. 169507–G were 120 barrels of whisky. The importer desiring to repack a portion of these goods, in August, 1924, the contents of 115 of said barrels were repacked into 84 barrels. These 115 barrels gauged, on importation, 4,468.50 proof gallons; on regauge of the refilled 84 exported barrels the contents were found to be 3,976.50 gallons. Duty was assessed on the total outage at $2.20 per gallon, which was paid October 15, 1924. The importer's protest was filed November 12, 1924.

The various protests having been consolidated, the Customs Court, with Adamson, J., dissenting, entered judgment overruling the various protests, except as to protest No. 169507–G, wherein it was ordered that an allowance be made to importer of 5 per cent of the amount of his importation, for outage, under article 311 of the Customs Regulations of 1923. The Government, in the court below, entered its motion to dismiss protests Nos. 169505–G and 160927–G, on the ground that they were not filed within the period allowed by law. This motion was overruled by the Customs Court,

and, the Government having assigned no cross errors, will be concluded in this respect by the judgment below. The importer has appealed.

The importer contends that the dutiability of the goods in question, they having remained in bonded warehouse until after the Tariff Act of 1922 became effective, must be governed by that law; that under section 562 thereof the importer's goods, being withdrawn for exportation, were not dutiable, or, if they were withdrawn for consumption, were only dutiable in their *condition* at the time of withdrawal, including quantity, etc. On the other hand, the Government argues that where liquors are withdrawn for exportation, the parties are governed by article 274, Customs Regulations of 1915, or article 311 of the Customs Regulations of 1923, which are identical in language, and any excess of outage over the amount allowed by the said customs regulations, is dutiable. The contention of importer as to goods withdrawn for consumption is not involved in this case, the goods in question all being withdrawn for export. This phase of the matter, therefore, we do not deem it necessary to discuss in order to dispose of the issues presented.

The relevant statute and customs regulations are as follows:

SEC. 562. *Manipulation in warehouse.*—Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than 1 ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided,* That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation, without payment of the duties, or for consumption upon payment of the duties accruing thereon, in its condition at the time of withdrawal from warehouse. The scouring or carbonizing of wool shall not be considered a process of manufacture within the provisions of this section.

ART. 311. *Liquors, regauge.*—Liquors in casks will be regauged on withdrawal for exportation, and duty will be collected on any deficiency from the original gauge in excess of the following allowance for evaporation:

One per centum for the first 6 months or less after the date of entry.
Two per centum after 6 months and not over 12 months.
Three per centum after 12 months and not over 18 months.
Four per centum after 18 months and not over 24 months.
Five per centum after 24 months and not over 36 months.

The issues involved here require a construction of the language of said section 562. This section is new and appeared for the first time in the Tariff Act of 1922. Prior to that time customs regulations permitted some repacking in bonded warehouse, but to no considerable extent.

The Ways and Means Committee, in reporting H. R. 7456, afterwards the Tariff Act of 1922, Report 248, Part 1, Sixty-seventh Congress, first session, said in part:

Part IV of the bill comprises the law governing the transportation in bond and warehousing of merchandise. The right of entry for immediate transportation without appraisement, now limited to particular merchandise designated from time to time in special acts of Congress, is made general. Another relaxation helpful to importers is the privilege, with the consent of the Secretary of the Treasury, of cleaning, sorting, repacking, or otherwise changing, short of manufacture, the condition of merchandise in bonded warehouses.

This was doubtless to meet in part suggestions made to the committee that the industry of the country might be benefited by liberal provisions for repacking in bonded warehouses. Hearings, Tariff Act of 1922, H. of R., Pt. VI, p. 4197. There can be no doubt that the language of section 562 very greatly liberalized the practice in bonded warehouses as it had theretofore existed.

We had before us, in *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, a case which, in many respects, is similar to the case at bar. There the importers entered under the Tariff Act of October 3, 1913, certain wine for warehousing, part of which was withdrawn for consumption during the life of that act and a part of which remained in warehouse after the coming into effect of the Tariff Act of 1922.

After the Tariff Act of 1922 became effective the entry was reliquidated under that act. Thereafter the importer applied for the destruction of the remaining portion of said wine under section 557 of said tariff act. Before destruction the Government caused the wine to be regauged, destroyed the amount then in the casks, and required the importer to pay duty on the difference between the amount actually destroyed and that shown by the original gauge.

This court held, in the case cited, that the provisions of the Tariff Act of 1922 were applicable, and must determine the rights of the parties. We then said:

But, it is argued, the collector, having assessed duties, according to the law, upon the number of gallons of wine imported, could allow only for the gallons he actually destroyed, and the Government cites articles 309 and 311 of the Customs Regulations of 1923 in support of this position. Those articles are as follows:

ART. 309. *Withdrawal before liquidation—Damage, etc.*—Except when the appraiser's return shows no advance in value or change in rates, no withdrawal for export shall be allowed before the liquidation of the warehouse entry, or a special liquidation of such items as refer to the merchandise exported, and there shall be no abatement or allowance of duties on account of damage, loss, or deterioration of merchandise while in warehouse, except as provided by statute.

ART. 311. *Liquors, regauge.*— * * *.

It is manifest, on examination of these provisions, that they were intended to apply to cases where goods are withdrawn from bonded warehouse for export. It is significant that there is no like provision of the customs regulations for goods to be destroyed under section 557.

We can not escape the conviction that the procedure adopted here by the collector is not doing complete justice to these importers. The collector did not regauge the wine when he reliquidated under the Tariff Act of 1922, but took the original gauge as correct. Upon what theory, then, can he justify his act in regauging it before he destroyed it? If the gauge is good for duty purposes, when money is to be taken from the purse of the importers, why is it not good when the importers seek to abandon and destroy their goods?' Our customs laws, necessarily highly technical and calling for a close construction, are also intended, so far as may be possible, with due regard for the purposes for which such laws are enacted, to be just and fair. We have, on several occasions, suggested that all the Government ought to seek and obtain, is the duties which justly accrue, according to law, upon the goods which enter into the commerce of our country. Here the importers did all they could to comply with the law, and their bond should have been canceled upon the destruction of their goods by the collector.

A very similar question arose in T. D. 38664, 39 Treas. Dec. 179. There liquors were gauged and placed in bonded warehouse. When withdrawn for export they were regauged, and it being found more than the ordinary outage was gone the importer was required to pay duties on the amount wanting, over the outage. General Appraiser Adamson there held that inasmuch as the original puncheons were exported, without any of the contents thereof having been withdrawn, it was unlawful to impose duties on the wantage.

In this connection it may be suggested that if the wine in question had been imported in bulk and withdrawals had been made from the entire amount then a different question might be presented. But here the original packages imported were intact and identified. They had been continuously in customs custody; and if there was a wantage above the ordinary allowance, it could not be attributed to any act of the importers.

It will be observed that in the case cited we called attention to the fact that article 311 of the Customs Regulations of 1923 was only applicable where goods were withdrawn from bonded warehouse for export and that we also, in that case, gave considerable weight to the fact that the original packages imported were intact and identified and thus destroyed. It remains to be seen whether a different rule should be applied where goods are repacked under section 562 than was applied in the Casazza case, supra.

The said statute provides plainly that imported goods in warehouse may be cleaned, sorted, repacked, or otherwise changed in condition, so long as they are not manufactured, and may "be withdrawn therefrom for exportation, without payment of the duties, or for consumption upon payment of the duties accruing thereon, in its condition at the time of withdrawal from warehouse." It is obvious, from a reading of this statute, that the legislative intent was to permit the exportation of such goods without the payment of duties. As we intimated in the Casazza case, supra, if goods in the original intact packages were destroyed in bonded warehouse under the authority of said section 557, there was no necessity for an ascertainment of the quantity of the goods as compared with the amount originally imported; nothing having entered

the commerce of the country, no duties accrued under said section. The same argument may well be applied to cases coming within the proviso of said section 562. If imported goods are exported under this section, no duties accrue upon them, nor can it make any particular difference if the goods, instead of being exported in their original packages, are repacked for exportation. It is presumed that this repacking is done under Government supervision. The goods are in customs custody during the entire period. If there is any loss or abstraction of the goods during the period of repacking, it is done with the implied knowledge of Government officials. The whole theory of customs laws is to impose duties on dutiable articles which enter into the commerce of the country.

Article 311 of the Customs Regulations of 1923, as we have seen, was carried forward intact from article 274 of the Customs Regulations of 1915, which, in turn, was practically identical with articles 274 and 275 of the Customs Regulations of 1908. These regulations of 1915 and 1908 were promulgated before section 562 of the Tariff Act of 1922 became effective.

It is probable, therefore, that said article 311 was intended to apply to exportations made not under said section 562 but such as might be made under other provisions of the law. It must also be understood that in what we have herein said no reference is had to importations and exportations and customs regulations pertaining thereto, except such as are within the purview of said section 562.

In view of the suggestions above made we conclude that no duties accrued on the whisky involved in this case, and the judgment of the court below is therefore reversed in all respects except as to protest No. 169506–G, in which respect it is *affirmed*, and the cause is *remanded* to the customs court for further proceedings in conformity with this opinion.