R. C. WILLIAMS & CO., INC. *v.* UNITED STATES (No. 4168)[1]

---

[1] C. A. D. 19.

United States Court of Customs and Patent Appeals, November 28, 1938

*Pickrell & McDonald* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 11, 1938, by Mr. McDonald and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Third Division.

The collector at the port of New York assessed merchandise, consisting of salmon imported in tin containers, with an additional duty of 10 per centum ad valorem under the provisions of subdivisions (a) and (b) of section 304, Tariff Act of 1930, for the alleged reason that it was not "marked, stamped, branded, or labeled" so as to indicate the country of origin, and, acting under the authority conferred by the

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

provisions of subdivision (c) of that section, withheld delivery of the merchandise and required that the tin containers be remarked.

The importer protested the collector's assessment of the additional duty.

The relevant provisions of the statute read:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or can not be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

(c) DELIVERY WITHHELD UNTIL MARKED.—No imported article or package held in customs custody shall be delivered until such article (and its container) or package and every other article (and its container) or package of the importation, whether or not released from customs custody, shall have been marked, stamped, branded, or labeled in accordance with the requirements of this section. Nothing in this subdivision shall be construed to relieve from the requirements of any provision of this Act relating to the marking of particular articles or their containers.

The case involves four protests which were consolidated for the purpose of trial.

On the trial in the Customs Court it was stipulated by the parties that the salmon was actually packed in Russia.

It clearly appears from the record that, in the presentation of the issues in the case to the trial court, counsel for both parties assumed that the merchandise was legibly and indelibly marked in a conspicuous place, and that the sole question presented to the trial court was whether the containers in which the salmon was packed were marked "Packed in Japan" as claimed by counsel for the Government, or whether they were marked "Packed in Russia," the country in which the salmon was packed, as claimed by the importer-appellant.

The merchandise was packed in Russia. If it was marked "Packed in Russia," it was legally marked. *William Camp Co.* v. *United States*, 24 C. C. P. A. (Customs) 142, T. D. 48623.

Protests 675293–G and 675294–G, dated April 25, 1933, were filed with the collector May 5, 1933, and relate to the merchandise covered by entries 8517 and 8518, respectively.

Protests 675298–G and 675299–G, dated October 2, 1933, were filed with the Collector of Customs on October 6, 1933, and relate to the merchandise covered by entries 748251 and 8522, respectively.

Each of the involved protests was amended by adding thereto the following language:

We protest against your assessment of marking duty at 10 per centum *ad valorem* and claim that said assessment was illegal, void, and of no effect whatever, for the reason that the merchandise was in fact marked in strict accordance with the provisions of Section 304, Tariff Act of 1930.

On the trial below, counsel for appellant stated in open court that appellant abandoned paragraphs 2 and 3 of each of the involved amended protests, and relied upon the remaining portions thereof.

As the abandoned matter in each of the protests is identical, we quote paragraphs 2 and 3 of protest 675293–G only:

We hereby protest your assessment of a 10% marking duty under Section 304 b of the 1930 Tariff Act, because the tins when imported *were marked properly "Packed in Japan."*

Said marking duty was levied and collected because the *goods bore the marking "Packed in Japan,"* whereas it was held by the collector of customs that they should have been marked "Packed in Russia." [Italics ours.]

On motion of counsel for the importer, the reports of the collector in answer to the involved protests were admitted in evidence by the trial court without objection on the part of counsel for the Government. Counsel for the importer also offered in evidence special reports of the appraiser in answer to appellant's protests 20419 and 21451, referred to in each of the reports of the collector. Those special reports were admitted in evidence by the trial court as Illustrative Exhibits A and B over the objection of counsel for the Government, to which ruling of the court exceptions were duly taken. (It appears from a statement made by counsel for appellant in open court during the progress of the trial in the Customs Court that protests 20419 and 21451 were abandoned by appellant subsequent to the filing of the appraiser's reports in answer thereto.)

The involved reports of the collector being substantially the same, we quote the material portion of the report in protest 675293–G only. It reads:

*Nov. 11, 1933.*

Respectfully referred to the U. S. Customs Court for decision.

The merchandise in question consists of salmon packed in tin containers which were imported without being marked, stamped, branded, or labeled in legible English words in a conspicuous place in such manner to indicate the actual country of origin.

Accordingly the Appraiser returned the invoice with endorsement "Merchandise not legally marked with country of origin."

Duty was assessed in entry liquidation at the 25% *ad valorem* rate to which salmon is subject under paragraph 718 (b) of the Act of 1930 and in addition at the extra 10% *ad valorem* rate fixed in Section 304 of said Act for merchandise not marked with the country of origin at time of importation.

*See Appraisers special report with protests Nos. 20419/33 and 21451/33*, and Bureau of Customs letter dated July 28, 1933, 51–5/4c, 275–2882, copy enclosed in entry. [Italics in last paragraph ours.]

## Illustrative Exhibits A and B read as follows:

ILLUSTRATIVE EXHIBIT A

Answer to Protest

United States Customs Service

Appraiser's Office, Port of New York

MWH JM.                                                                                    10/17/33.

Protest No. 20419.

Importer: R. C. Williams & Co., Inc.

Invoice No. ——.

Entry No. B.8517.

Date: 11/2/32.

The merchandise in question consists of canned salmon on which there has been levied a duty of 10% *ad valorem* under Section 304, act of 1930, for failure to mark the tins, as required by that section. The tins are the immediate containers and capable of being marked without injury to the tin or the merchandise in it. *In the opinion of this office, the marking of the tins "Packed in Russia" did not constitute a compliance with the requirements of Section 304.* [Last sentence, italics ours.]

ILLUSTRATIVE EXHIBIT B

Answer to Protest

United States Customs Service

Appraiser's Office, Port of New York

MWH JM.                                                                                    10/17/33.

Protest No. 21451.

Importer: R. C. Williams & Co., Inc.

Invoice No. ——.

Entry No. B.8518.

Date 11/2/32.

The merchandise in question consists of canned salmon on which there has been levied a duty of 10% *ad valorem* under Section 304, act of 1930, for failure to mark the tins, as required by that section. The tins are the immediate containers and capable of being marked without injury to the tin or the merchandise in it. *In the opinion of this office, the marking of the tins "Packed in Russia" did not constitute a compliance with the requirements of Section 304.* [Last sentence, italics ours.]

Mr. F. Harry Lewis, an examiner of merchandise at the port of New York, who, at the time of the importation of the involved merchandise, October or November 1932, was an assistant to the examiner of merchandise, stated that he examined the involved merchandise subsequent to its importation; that it was marked "Packed in Japan,"

and that the red-ink notations on the "Summary of Examination and Appraisement" sheets accompanying the involved entries were made by him.

The red-ink notation on the "Summary of Examination and Appraisement" sheet in protest 675294–G is typical of the notations referred to by the witness. It reads: "Merchandise not legally marked with country of origin. Note Bureau's telegram."

On cross-examination the witness stated that the merchandise was imported in the fall of 1932, and that considerable merchandise like that here involved was imported at approximately the same time. When asked how he could recall over a period of five years how the merchandise was marked, he stated that he had kept samples to refresh his memory. When a sample (a can), marked for identification as Illustrative Exhibit C, which came from a shipment to another importer and which was marked "Packed in Japan," was shown to the witness, he testified that it refreshed his memory as to how the involved merchandise was marked at the time of its importation. No sample of the *involved merchandise* was produced by the witness, and, although he stated that he had a written record from which his memory might be refreshed as to how the merchandise was marked, no such record was produced by him. The witness was shown Illustrative Exhibits A and B, and two labels which were marked "Packed in Russia" and which were apparently attached to the papers in the case. With regard thereto, he testified as follows:

X Q. Now, Mr. Lewis, I show you the appraiser's report stating October 17, 1933, the one marked Illustrative Exhibit A and the other marked Illustrative Exhibit B (handing to witness), and invite your attention to the last sentence of those two reports; and in connection with those two reports I also invite your attention to two labels which the Collector of Customs or someone has kindly attached to the papers in this record; and also direct your attention to the legend or marking on these labels and ask you, after examining the reports and labels, to state whether or not you wish to change your testimony with respect to the marking of these samples?—A. This report——

X Q. Which report?—A. This A and B—not checked by me.

X Q. Not checked by you? So you know nothing whatever about the accuracy of the appraiser's reports A and B?—A. I don't know.

X Q. What about the labels there? How are they marked?—A. "Packed in Russia."

X Q. "Packed in Russia?" And they are attached to the papers in the case, are they not?—A. Yes, sir.

    \*      \*      \*      \*      \*      \*      \*

X Q. Would you positively state, Mr. Lewis, that the merchandise covered by the four entries in question did not bear labels similar to those attached to the entry?—A. I don't think so.

X Q. Would you make a positive statement to that effect?—A. I don't think so.

Judge CLINE. "I don't think so"—What do you mean?

The WITNESS. I don't think that is the true label that covered this merchandise.

By Mr. McDonald.

X Q. *Are you sure of it—that it is not?*—A. *I cannot positively say.* [Italics ours.]

In its decision the trial court stated, among other things, the following:

We find in the papers of the cases these notices on customs form 4647 which were forwarded to the importers in these cases and returned with notations on the backs thereof showing that the merchandise had been remarked in conformity with the law. On the back of the notice attached to the invoice in protest 675299–G appears certificates in hand writing as follows:

This is to certify that the tins contained in (10) cases marked B were legally labeled Packed in Russia.
Dated 12/27/32.
(Signed) R. B. Evans,
*U. S. Storekeeper.*

This is to certify that the tins contained in 990 cases were labeled packed in Russia on Pier.
December 30, 1932.
(Signed) C. J. Hilton,
*Inspector.*

Certificates in practically the same language as that signed by R. B. Evans, above quoted, are attached to the invoices covered by protests 675294–G and 675293–G. The notice attached to the invoice in protest 675294–G also contains an affidavit signed by the president of the importing company in the following language:

Arthur P. Williams, being duly sworn deposes and says that he has marked, or caused to be marked under his personal supervision, the merchandise in the importation referred to on the reverse side hereof, now in his possession, and that the marking was done in the following manner: "Made in Russia."
(Signed) Arthur P. Williams, *Pres.*

We have recited at great length all of the evidence of marking shown in these cases merely to show the inconsistencies in the record. The plaintiff concedes that the merchandise is the product of Russia and maintains that the special reports of the appraiser (Illustrative Exhibits A and B) in other cases, which by their terms do refer to the merchandise in entries 8517 and 8518, covered by protests 675293 and 675294 here involved, prove that the merchandise was marked "Packed in Russia" when imported. Yet the protests originally filed by the plaintiff argues that the goods were legally marked because they were marked "Packed in Japan"; the appraiser's report to the collector in protest 675299–G states that the merchandise covered by all the entries here involved was marked "Packed in Japan"; the examiner testified that it was marked "Packed in Japan"; and the affidavit and certificates of marking made by the president of the importing firm and the Government storekeeper and the inspector show that the merchandise was re-marked in this country after importation by the use of the words "Made in Russia" and "Packed in Russia." If the merchandise had been so marked when imported, it would not have been necessary to re-mark it with the same legend.

The only point in issue in these cases relates to a question of fact. Was the merchandise marked "Packed in Russia," as claimed by the plaintiff, or was it marked "Packed in Japan," as claimed by the defendant? We are of opinion that the weight of evidence sustains the contention of defendant, that the merchandise was marked "Packed in Japan" when imported. As Russia was admitted to be the country of origin of the goods, we hold that the merchandise was not legally marked.

Judgment was entered overruling the protests, and the importer appealed to this court. No cross-appeal was filed by the Government.

Appellant contends here, both in its assignment of errors and in its brief, that the trial court erred in considering as evidence in the case, statements contained in the abandoned paragraphs of the original protests, and the following documents which were not offered in evidence by either party; to wit, an affidavit of Arthur P. Williams, and certificates of R. B. Evans, United States storekeeper, and C. J. Hilton, inspector, each of which is set forth in the quoted excerpt from the trial court's decision, and a report by J. F. Kracke, appraiser, dated May 13, 1933 (hereinafter quoted), attached to the invoice in protest 675299–G. Appellant also contends, among other things, that the judgment below is contrary to the weight of the evidence.

In its decision the trial court referred to the "appraiser's report to the collector in protest 675299–G," which, the court stated, was attached to the invoice. The document referred to reads:

*May 13, 1933.*

Collector:

Respectfully returned with the report that the cans and cases of the shipments of canned salmon covered by invoices Nos. 8517, 8518, 8522 and 748251, were found, at the time of examination, to be marked "Packed in Japan."

(Signed) J. F. KRACKE, *Appraiser.*

It will be observed that Mr. Kracke's report, which was not introduced in evidence nor referred to by counsel for either party on the trial, is dated May 13, 1933, whereas the protest to which it was attached (No. 675299–G) and protest 675298–G are dated October 2, 1933, and were filed in the office of the collector on October 6 of that year. Accordingly, as to the merchandise covered by those protests, the report was premature by approximately five months, and was, therefore, untimely. Although Mr. Kracke's report apparently related to the merchandise covered by all of the entries and invoices here involved and was timely as to protests 675293–G and 675294–G, which were filed with the collector May 5, 1933, there is nothing in the reports of the collector to indicate that, so far as the involved protests are concerned, he ever made a request for an appraiser's special report. (See Customs Regulations of 1931, articles 853 and 855.) If, from the context of Mr. Kracke's report, the presumption might be entertained that such report was requested by the collector, we think it is also fair to presume, in view of the collector's reports in this case, that he rejected as incorrect the statement in Mr. Kracke's report that the merchandise was marked "Packed in Japan," and accepted, as correct statements, in Illustrative Exhibits A and B indicating that the merchandise was marked "Packed in Russia." We are of opinion, therefore, that, as to the merchandise covered by protests 675298–G and 675299–G, Mr. Kracke's report was not properly

before the trial court as evidence, and that the court erred in considering it as such. See *M. Pressner & Co.* v. *United States*, 26 C. C. P. A. (Customs) 186, Appeal 4174, decided October 31, 1938. Assuming, without deciding, that it was proper for the trial court to consider Mr. Kracke's report as a part of the record so far as it related to the merchandise covered by protests 675293–G and 675294–G, we are of opinion that, as it was evidently rejected by the collector in favor of the appraiser's reports (Illustrative Exhibits A and B), which, so far as the issues here are concerned, directly challenge the factual statements contained in Mr. Kracke's report, the latter may not be considered as probative evidence. *M. Pressner & Co.* v. *United States, supra.*

The affidavit of Arthur P. Williams, president of the importing company, and the certificates of R. B. Evans, United States storekeeper, and C. J. Hilton, inspector, referred to in the trial court's decision, were not offered in evidence by either party. Accordingly, as they were not a part of the record as evidence in the case, the court erred in considering them as such. In so holding, we do not wish to be understood as intimating that such documents would have been competent had they been offered in evidence by either party.

The trial court also referred in its decision to the fact that each of the original protests contains the allegation that the merchandise was marked "Packed in Japan." The court evidently was of opinion that those allegations tended to establish that the involved merchandise was marked "Packed in Japan" rather than "Packed in Russia" as claimed by appellant on the trial, and that it was proper for it to consider them as appellant's admissions against interest.

Paragraphs 2 and 3 in each of the original protests were expressly abandoned by counsel for appellant on the trial with the apparent acquiescence of counsel for the Government and the trial court, and, although counsel for the Government might properly have offered them in evidence as appellant's admissions against interest, they failed to do so. Accordingly, the statements contained in those abandoned paragraphs should not have been considered by the court as evidence in the case. See 22 C. J. §380, pp. 336 *et seq.*

The reason for the rule that admissions against interest in abandoned pleadings may not be considered by the court unless they are introduced in evidence is stated in the case of *Shipely* v. *Reasoner*, 87 Iowa 555, 54 N. W. 470, as follows:

Being only evidence, and subject to explanation, it seems that it should be introduced as any other evidence, and, unless so introduced, should not be considered. To hold otherwise is to permit a party to spring a surprise upon his adversary, by presenting the admissions when the opportunity to explain has passed. Surely the law does not contemplate such an unfair practice that would deprive a party of the privilege of explaining how and why the admission was made. (See 22 C. J. p. 338, note 62.)

Counsel for the Government contend here that the trial court erred in admitting in evidence Illustrative Exhibits A and B, and point out in their brief why, in their opinion, those exhibits were incompetent as evidence in the case.

Had counsel for the Government wished to raise in this court the question of the correctness of the rulings of the trial court in admitting in evidence Illustrative Exhibits A and B, they should have filed a cross-appeal and made a proper assignment of errors. Having failed to do so, the Government can not be heard here to complain. *Alex D. Shaw & Co.* v. *United States*, 16 Ct. Cust. Appls. 214, T. D. 42836; *Peoria & Pekin Union Ry. Co.* v. *United States*, 263 U. S. 528, 535, 536; *Morley Construction Co. et al.* v. *Maryland Casualty Co.*, 300 U. S. 185, 191; *United States Fidelity & Guarantee Co.* v. *Sweeney*, 80 F. (2d) 235, 240; *Mutual Life Insurance Co. of New York* v. *Cunningham et al.*, 87 F. (2d) 842, 843.

Counsel for the Government further contend that the evidence submitted by appellant is not sufficient to overcome the presumption of correctness attending the collector's decision, and, in support of that contention, argue that the evidence does not establish that the merchandise was marked in legible English words, in a conspicuous place, and as nearly indelible and permanent as the nature of the merchandise would permit, as required by the provisions of section 304 (a), *supra*.

It is true that the importer wholly failed to establish that the goods were marked in a conspicuous place, and that the marking was as nearly indelible and permanent as the nature of the merchandise would permit. However, counsel for the parties clearly indicated in statements to the Customs Court on the trial that the sole issue in the case was whether the involved merchandise was actually marked "Packed in Japan" as claimed by the Government, or whether it was marked "Packed in Russia" as claimed by appellant, and the case was so presented by them. We quote from the record:

Mr. McDonald. The protest in this case is directed against the assessment of a 10 per cent penalty under section·304 of the Tariff Act of 1930.

As well as I can ascertain from reading the papers in the case and from conferences with the officials of the Department, *this penalty was assessed by the collector for failure to mark the merchandise "Packed in Russia,"* the merchandise consisting of canned salmon. *Is that your understanding, Mr. Donohue?—as to the reason for the assessment of the penalty?*

Mr. Donohue. *That is my understanding.*

    \*     \*     \*     \*     \*     \*     \*

Mr. Donohue. \* \* \* It is the Government's position that the report [Illustrative Exhibit A] is obviously a mistake. The report which is offered, that is attached to protest 675296–G, states in part that: "the marking of the tins 'Packed in Russia' did not constitute a compliance with the requirements of section 304." *If these tins in the present case were, in fact, marked "Packed in Russia," there would be no case here this morning.* The report and the papers in the case,

in the protests which are now on trial, show the merchandise was marked "Packed in Japan," and it is the Government's contention it should have been marked "Packed in Russia."

\* \* \* \* \* \* \*

Mr. DONOHUE. I think the purpose of the incorporation of that report was to indicate that where the merchandise is marked "Packed in Russia" the word "Packed" does not indicate the country of origin. Now I don't think that that issue will be before the court in the present protest. That issue was disposed of in the last canned salmon case which was heard before this division and appealed to the appellate court, but my objection to this paper is that it does not represent the facts in the present case. Everything in this case indicates these cans were marked "Packed in Japan." Now here is an offer of a statement which at least infers that the cans are marked "Packed in Russia." It isn't in accordance with the facts in the present case, and it is a document from another case. [Italics ours.]

We are of opinion, therefore, that the trial court was right in concluding that the sole issue presented by the parties was whether the merchandise was marked "Packed in Russia" as "claimed by the plaintiff," or whether it was marked "Packed in Japan" as "claimed by the defendant." See *United States* v. *Bullocks, Inc.*, 25 C. C. P. A. (Customs) 381, 383, 384, T. D. 49465.

But one other matter remains to be considered, that is appellant's claim that the judgment of the trial court is contrary to the weight of the evidence.

Mr. Lewis, who testified for the Government, stated that he had examined the involved merchandise and that it was marked "Packed in Japan." However, on cross-examination he stated that he knew nothing whatever about the accuracy of the appraiser's reports—Illustrative Exhibits A and B. He further stated that he could not positively testify that certain labels marked "Packed in Russia," referred to in the quoted testimony of the witness, were not similar to those attached to the containers of the salmon in question. Furthermore, although the witness stated that he had a written record from which his memory might be refreshed as to how the merchandise was marked, no such record was produced by him.

We think it is apparent from the testimony of the witness that he was not certain in his own mind as to whether the involved merchandise was marked "Packed in Russia" or "Packed in Japan." Illustrative Exhibits A and B, however, clearly indicate that the merchandise was marked "Packed in Russia." Furthermore, there is nothing of record to indicate that Illustrative Exhibits A and B in any way impeach the collector's factual findings. So far as this record is concerned, the collector may have been of opinion that the marking of the merchandise "Packed in Russia" was not sufficient to indicate that the merchandise was *produced* in Russia. See *William Camp Co.* v. *United States, supra.*

We are of opinion that the decision of the trial court is contrary to the weight of the evidence. Accordingly, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

LENROOT, Judge, concurs in the conclusion as to protests 675293–G and 675294–G, and dissents as to protests 675298–G and 675299–G.