UNITED STATES *v.* SIEGFRIED LOWENTHAL Co. (No. 4410)[1]

[1] C. A. D 244.

20

United States Court of Customs and Patent Appeals, June 1, 1943

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Edwin D. Howald* for appellee.

[Oral argument February 3, 1943, by Mr. Donohue; no argument for appellee]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

On July 19, 1934, appellee entered at the port of Cleveland for warehouse under bond 50 kegs of Scotch whisky and 2 casks of American-type whisky imported from France, according to the invoice and entry papers. The entry was liquidated at the rate of $5 per gallon on 964.23 gallons in accordance with a quantity gauge seemingly made July 19, 1934. On November 10, 1936, the entry was again gauged for internal revenue purposes, the report of that gauge showing a gallonage of 537.6 gallons, from which 9 gallons were withdrawn for sampling. On April 6, 1938, the entry was reliquidated at the rate

of $2.50 per gallon on the quantity of merchandise shown by the original gauge except one keg #4, pursuant to the rate provided by the trade agreement with Canada, T. D. 48033. The entry with respect to that keg, which contained 17.84 gallons, was not reliquidated. Prior to the reliquidation, under a provision of section 562 of the Tariff Act of 1930, application was made by appellee to the Collector of Customs to repack the whisky in 49 containers for safety and preservation. The application was duly approved and the merchandise was transferred from the said original containers into glass containers and withdrawn for consumption. Two of the original containers were abandoned, the contents thereof being, according to the original gauge, 89.78 gallons. Duty was assessed in accordance with the original customs gauge on the entire entry, but the amount actually withdrawn for consumption was 528.6 gallons. The importer protested the action of the collector, claiming that duty should have been taken on the gallonage actually withdrawn rather than on the amount imported as shown by the original gauge.

The case was tried in the city of Cleveland, Ohio, and in its first decision the United States Customs Court, Third Division, entered judgment for the United States on the ground that it was not clear from the record that any withdrawal had been made of the repacked whisky and therefore it did not appear that duty was assessed on an excessive number of gallons as claimed by the importer. A rehearing was granted and the amount of whisky actually withdrawn was established. The said court then rendered judgment for the importer, citing as authority its decision in the case of *La Montagne Bros., Inc.* v. *United States*, 68 Treas. Dec. 372, T. D. 47918. From that judgment this appeal was taken.

Appellant contends that paragraph 813 and section 563 of said tariff act, taken either separately or together, prohibit any allowance to appellee for loss of liquor sustained by breaking, leaking, or damage unless appellee has brought itself within the exceptions recited in either said paragraph or said section, which appellant urges are negative and that therefore the said exceptions should be strictly construed. Appellant further contends that section 562 of said act should not be so construed that an allowance by reason of loss, leakage, or damage to liquor should be granted in view of paragraph 813 and section 563.

Appellee contends in its brief that under the provisions of section 562 duty should be assessed only on the quantity of liquor at the time of withdrawal from warehouse. No oral argument was presented to us on its behalf.

The involved paragraph and sections, so far as they are here relevant, read as follows:

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that

when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Sec. 562. MANIPULATION IN WAREHOUSE.

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom * * * for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, * * *.

Sec. 563. ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS.

(a) Allowance.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated, and to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be, but no abatement or refund shall be made in respect of injury or destruction of any merchandise in bonded warehouse occurring after the expiration of three years * * * from the date of importation. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons.

*       *       *       *       *       *       *

(b) Abandonment.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years (or ten months in the case of grain) from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

The record of the said regauging is in evidence and discloses that 39 of the containers at the time of regauging were seemingly defective by reason of broken staves, patching, recoopering, leaky staves, and leaky bung. By reason of the said condition of the containers appellant vigorously contends it follows by necessary inference that the difference between the amount of whisky determined by the first gauge and the amount shown by the second gauge was lost by leakage. Appellant urges that such loss could not be accounted for by normal evaporation nor would it be the normal loss incident to repackaging the merchandise. There is no contention that the gauges made on the whisky were not accurate, and no contention that there was any loss of the merchandise in repackaging.

There is no direct evidence bearing on the actual reason for the shortage, but we are of opinion that it would be unreasonable to infer that the loss of 426.63 gallons (about 45 per centum of the quantity shown by the gauging made on entry) was caused solely by evaporation.

There is nothing in the record describing the condition of the original containers when the merchandise was entered or anything to indicate that they had been improperly handled or "tampered with" while in the warehouse. No question has been raised by appellee concerning any allowance which might be proper in connection with normal evaporation of the merchandise. We have no doubt that in addition to some evaporation which must have occurred, there was very much leakage.

The court below in its decision based its judgment upon the case of *La Montagne Bros., Inc.* v. *United States, supra.* That case was not appealed. According to the opinion of the trial court in that case the importer protested the action of the collector in assessing duties upon a deficiency of certain distilled spirits, the deficiency being the difference between the gauge of the liquor when entered in warehouse and the gauge upon rebottling. The importer claimed that no duty should be levied upon the missing liquor for the reason that it did not enter into the commerce of the United States and therefore was a nonimportation; that no charge of any nature was properly assessable on the merchandise by reason of any loss in quantity or weight due to any cause while the merchandise was in the custody of the Government, and that the merchandise having been repacked pursuant to permission granted by the Secretary of the Treasury and under customs supervision no duty could be legally assessed upon a greater quantity than that withdrawn from the warehouse for consumption in its repacked state at the time of withdrawal. A motion to dismiss the protests as untimely, made by counsel for the Government, was overruled. The court sustained the protests, citing section 563 of the Tariff Act of 1922 and pointed out that under the provisions thereof an abatement of

duty may be authorized upon production of satisfactory proof before the court of actual injury or destruction by accidental fire or other ·casualty. The court then cited the case of *Alex. D. Shaw & Co.* v. *United States*, 39 Treas. Dec. 179, T. D. 38664, G. A. 8418 (decision ·of the Board of General Appraisers, not appealed to this court), and stated the language in that section reading "In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage" not to be applicable to evaporation. The court also cited the case of *Casazza & ˙Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, stating that in that case it was held that the time of importation must be deemed the time of withdrawal for consumption. The court further cited the case of *Alex. D. Shaw & Co.* v. *United States*, 16 Ct. Cust. Appls. 214, T. D. 42836, stating that the liquor in bonded warehouse involved therein was repacked under section 562 and thereafter exported. The court quoted at length from the language in that case in which quotation this court construed section 562 of the Tariff Act of 1922 and held that in that case no duties accrued on whisky not found upon regauging. On the strength of the cited cases therein the court in the *La Montagne* case, *supra*, held that the liquor which had evaporated had no more dutiable status than would liquor which had been abandoned to the Government or which had been exported, and sustained the protests of the importer.

In the first *Shaw* case, *supra*, certain liquors were imported under the tariff act of Oct. 3, 1913, and placed in bonded warehouse and within the 3 years allowed by statute were withdrawn for. export in the original packages intact, without any of the contents having been removed. The Board of General Appraisers (now the United States Customs Court) held that the collector erred in assessing and collecting duty on the wantage shown by the withdrawal gauge for the reason ˙that the difference in gauge between the time of entry and withdrawal was due entirely to evaporation. The board in its opinion stated that

* * * where the original packages were exported without any of the contents being withdrawn in any manner, either by theft, sale, gift, leakage, or any possible means but the sole possibility of evaporation, there was a complete exportation of ,the same entire packages which came in.˙ No liquor escaped from the puncheons. Evaporation left a vacancy. The entire package was exempt from duty because ·exported entire.

In the *Casazza* case, *supra*, the importation was entered during the life of the tariff act of Oct. 3, 1913, and a portion of it remained in bond after the effective date of the Tariff Act of 1922, September 21, 1922; against that portion the collector assessed duty under the latter act. The importation consisted of barrels of wine. Those of which remained after a regauge were destroyed. The collector called upon

the appellants to pay additional duty upon the amount represented by the difference between the amount actually destroyed and that originally imported in the casks and barrels that were destroyed. The Board of General Appraisers sustained the action of the collector, stating in its decision as follows:

The result reached by the collector is, in our judgment, correct, but his reasoning rather erroneous. As the entry was made under the act of 1913 and no claim was made or supported by evidence under section 244 of the act of 1913, the collector could not assume and allow for breakage or leakage. Neither did the law at the time of the entry authorize the destruction of such merchandise and the consequent relief to the importer from duty. The importer has already received more than he is entitled to receive. He should have been required to pay the entire amount of the liquidation, to which he did not object.

In reversing the judgment in that case, this court held that goods remaining in bonded warehouse after September 21, 1922, upon which duties were unpaid were subject to the provisions of section 557 of the Tariff Act of 1922, which provided that

Merchandise entered under bond, under any provision of law, may be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and the consignee relieved of the payment of duties thereon.

The gist of that decision is that under the express provision of said section 557 the importers might abandon and destroy their goods while in bonded warehouse without being subject to the payment of duty on the destroyed goods.

In the *La Montagne* case, *supra*, the decision in the *Casazza* case, *supra*, is stated to have held "that the time of importation must be deemed to be the time of withdrawal for consumption." We do not understand the *Casazza* case to lay down such a broad doctrine. In that case this court stated:

For all dutiable purposes, therefore, it is plain Congress intended goods remaining in bonded warehouse after September 21, 1922, with duties unpaid thereon, to be subject to the provisions of the Tariff Act of 1922. We have, *in such cases*, held on many occasions, that the time of importation must be deemed to be the time of withdrawal for consumption and that, *to this extent at least*, the rights and remedies of the parties must be determined by the provisions of the new law. [Citing cases.] [Italics supplied.]

The *Shaw* case, 16 Ct. Cust. Appls. 214, T. D. 42836, *supra*, involved importations of whisky on various dates from October 1920, to July 1921, entered for warehousing under the tariff act of Oct. 3, 1913. Subsequent to the effective date of the Tariff Act of 1922, upon application by the importer, the Secretary of the Treasury granted permission to the appellant to repack certain barrels. Some of those repacked barrels were exported and others remained in the warehouse under bond. In that case the appellant protested the exaction and payment of duty levied against an excess outage of the liquor, which said outage

had been determined by the difference in quantity in two different gauges. The Government's motion to dismiss the protests as untimely was overruled by the trial court and since no cross-error was assigned this court held the action of the trial court to be conclusive. The issues on appeal, according to the opinion of this court, required a construction of section 562, which was a new section appearing for the first time in the Tariff Act of 1922.

In the opinion of this court that section was construed as though paragraph 812 of the Tariff Act of 1922, the prototype of paragraph 813 of the present act, and section 563 of the same act, which as far as the issues here are concerned is substantially similar to the same numbered section of the present act, were not in existence. The following language appears in the opinion: "It must also be understood that in what we have herein said no reference is had to importations and exportations and customs regulations pertaining thereto, except such as are within the purview of said section 562." Apparently section 562 was construed as it was by the court in that case for the reason that paragraph 812 and section 563 of the Tariff Act of 1922 were not called to the attention of either the trial court or this court, and the issue was confined to the dutiable status of the merchandise which was repacked for exportation.

This is the first time that we have been called upon to consider the applicability of paragraph 813 and section 563 to the proviso of section 562 of the Tariff Act of 1930 or similar provisions of the Tariff Act of 1922, and in construing section 562 we must do so in the light of the provisions of paragraph 813 and section 563.

As far as paragraph 813, *supra*, is concerned it is very plain that no allowance, constructive or otherwise, shall be made for breakage, leakage, or damage on liquors unless the container thereof has been broken or injured in transit from a foreign port and that because of such breaking or injury liquor amounting to 10 per centum or more of the total value of the cask or package has been lost. This is a plain statutory prohibition forbidding any allowance for loss of liquor except under the conditions set forth in that paragraph.

In the case of *Park & Tilford Import Corporation* v. *United States,* 26 C. C. P. A. (Customs) 342, C. A. D. 38, certain bottles of Scotch whisky were broken, the entire contents of the bottles having leaked away. The collector made no allowance for the liquor so lost and appellant protested the action of the collector and challenged his right to assess duty upon goods which were "never imported and therefore not legally subject to customs duty or other tax." No evidence was introduced before the trial court except the official papers in the case. The trial court overruled the protest and held the collector's assessment of duty to be proper. The action of the trial court was based on paragraph 813, the constitutionality of which was

attacked by the appellant. The only question before this court was the constitutionality of that paragraph based on the contention that the whisky which was lost in transit was never imported and consequently not subject to customs duty. We affirmed the judgment of the lower court and quoted with approval from the opinion in the case of *United States* v. *A. D. Shaw & Co.*, 144 Fed. 329, which opinion was adopted by the appellate court verbatim from the opinion of the trial court as follows:

It may be admitted that the rule against allowance for leakage is a severe one in that class of cases where, say, 50 gallons, more or less, leak out of a full cask of wine or liquor. Unless, however, we bring such cases within the purview of the prohibition in said paragraph 296 there would be no room whatever for its operation. The well-settled rule is that a construction which leaves to a sentence or clause of a statute no field of operation should be avoided. *Where a substantial quantity of the wine or liquor arrives in the United States, there is something upon which duty can be assessed; and the only effect of disallowing leakage is to raise the amount of duty on the portion of liquor actually coming into the country;* and this has been held to be within the power of Congress in *Bensusan* v. *Murphy* (3 Fed. Cas., 240; 10 Blach., 530) heretofore mentioned. \* \* \* [Italics quoted.]

We make reference to the *Park & Tilford* case, *supra*, merely for the purpose of reiterating the principle of law therein announced that "the only effect of disallowing leakage is to raise the amount of duty on the portion of liquor actually coming into the country" as being within the power of the Congress. Our decision in the *Park & Tilford* case, *supra*, sustained the action of the collector in disallowing loss when the importer did not bring himself within the exception of paragraph 813, *supra*. So in this case, if paragraph 813, *supra*, is not modified by another statute the only effect of the assessment of duty upon the entire importation of liquor is to raise the rate of duty on the portion withdrawn for consumption.

Section 563 provides for allowance for loss and abandonment of warehouse goods. Under subdivision (a) thereof no merchandise which has suffered by reason of injury, deterioration, loss or damage in customs custody shall receive the benefit of any abatement or allowance in duties unless such loss or injury comes within specifically defined exceptions, among which appears "*actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse*". [Italics ours.]

Certainly under the provision of subdivision (a) of section 563, *supra*, taken by itself, there can be no recovery by appellant, nor has he sought to recover under that statute.

If the judgment appealed from is to be sustained it must be because the provisions of section 562, *supra*, carve an exception from or modify paragraph 813 and section 563.

Section 562 provides for manipulation of imported merchandise in warehouse. It appears to be divided into separate and independent parts. The part of the section preceding the proviso provides that

no merchandise shall be withdrawn from bonded warehouses in less quantity than an entire container as imported except by special authority of the Secretary of the Treasury. The section then provides that if in the judgment of the collector it is necessary to the safety or preservation of the merchandise to repack or transfer the same it may be done upon application of the importer to the *collector*. Those two parts of the section, in our opinion, are complete in themselves, and the latter part vests in the *collector* independent judgment for the repackaging of goods for their safety or preservation.

The record here shows that appellee made application to the collector to repackage a portion of its imported goods for safety and preservation. In a rather illegible penciled notation on one of said applications we seem to decipher "Conditionally approved pending Bureau decision" with some initials appearing below the notation. The merchandise herein beyond question was repacked pursuant to the approval of the collector upon such application. There is nothing in the record to indicate that appellee applied for permission from the Secretary of the Treasury to withdraw its merchandise in quantities requiring his special authority, or that any such authority was granted.

The proviso of section 562, *supra*, authorizes the Secretary of the Treasury to grant permission to an importer to clean, sort, repack or otherwise change in condition merchandise under customs supervision and at the expense of the proprietor, and withdraw it for consumption upon payment of the duties accruing thereon in its condition and quantity and at its weight at the time of withdrawal. There is nothing in the record here to indicate that any permission was sought from or granted by the Secretary of the Treasury to repack the whisky under said proviso. However this may be, the parties seem to agree that the actions taken for repackaging the goods by the appellee were properly made under the proviso and that proper permission therefor was granted. We will assume for the purposes of this case that such is the fact.

It is an elementary rule of statutory construction, which requires no citation of authority, that all parts of a statute should be given effect if possible, and that general language in one part of a statute will not be held to modify specific provisions of another part unless such modification is expressly stated or clearly implied. There is no express modification of paragraph 813 or section 563 by section 562. Neither, in our opinion, is there any modification thereof by implication. There is nothing in the legislative history of section 562, *supra*, which would warrant a different conclusion. Furthermore, paragraph 813 is a provision directed specifically to intoxicating liquor and it would be repugnant to rules of statutory construction to hold that general provisions such as appear in section 562 overrule, modify, or repeal the specific provisions of the paragraph.

We see nothing anomalous between the provisions of paragraph 813, *supra*, and section 562. That section under its proviso authorizes an importer to repack any merchandise in bonded warehouse pursuant to permission therefor being granted by the Secretary of the Treasury. Under that proviso, giving it liberal construction, an importer may repack intoxicating liquors. However, should it be held that an importer of intoxicating liquor may secure an abatement or refund of duties under that section due to loss of liquor while in bonded warehouse, it would in all such cases completely nullify paragraph 813, which may not be done. The same nullification would apply to section 563 (a), *supra*, in all such cases.

For the reasons hereinbefore stated, the decisions in the cases of *La Montagne Bros., Inc.* v. *United States*, 68 Treas. Dec. 372, T. D. 47918, *Alex. D. Shaw & Co.* v. *United States*, 39 Treas. Dec. 179, T. D. 38664, G. A. 8418, and *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, all, *supra*, are held to be inapplicable herein, and the decision in the case of *Alex. D. Shaw & Co.* v. *United States*, 16 Ct. Cust. Appls. 214, T. D. 42836, insofar as it conflicts with our holding herein, is overruled.

The judgment appealed from is *reversed*.

BLAND, Judge, specially concurring.

I concur in everything that is said in the opinion except its reference to the failure of securing the permission of the Secretary of the Treasury, which should not be considered by this court since the matter was not raised below or presented here by any proper assignment of error.

I specially concur for the purpose of stating that I think the opinion should construe section 562 so as to be a guide when future controversial questions are raised. The opinion merely holds that section 562 was not intended by Congress to repeal or make inapplicable paragraph 813 and section 563. With this conclusion I fu ly agree, but the reason which brings me to this conclusion (and, as far as I know, this reason is not questioned by my associates) is the fact that by a construction which I regard as logical and proper, the operation of all three controverted provisions may be given full effect without one having the tendency of nullifying the other.

The pertinent part of section 562 on "Manipulation in Warehouse" is that reading, "upon payment of the duties accruing thereon, in its condition *and quantity, and at its weight,* at the time of withdrawal from warehouse, *with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition.*" The italicized portion is new language in the Tariff Act of 1930. In the Tariff Act of 1922 the provision read, "upon payment of the duties accruing thereon, *in its condition* at the time of withdrawal from ware-

house." [Italics mine.] The words "and quantity, and at its weight" and the additional language were inserted into the 1930 act.

To me it seems simple why such amendment was made to the section applicable to manipulation in warehouse. Certain imported articles were permitted to be "cleaned, sorted, repacked, or otherwise changed in condition," with the result that the dutiable quantity of the merchandise would be lessened or increased. For instance, wool— an importer thereof was privileged to remove the burr content and thus avoid payment of duty upon burrs, and therefore Congress provided for "in its * * * quantity, and at its weight" because it was not the purpose of Congress to require that the quantity or weight of the wool be taken as entered, since, in the condition in which it went into consumption, it was freed from considerable of its quantity and weight.

This thought leads to the suggestion that Congress had in mind saying nothing more than that goods which were "cleaned, sorted, repacked, or otherwise changed in condition" would, if the quantity or weight had changed by virtue of such repacking, cleaning, etc., be dutiable on the quantity as withdrawn. Concerning the said change in section 562 of the 1930 act from the language used in the 1922 act, the report of the House Committee on Ways and Means (Report No. 7 to accompany H. R. 2667) stated at page 183:

SECTION 562. MANIPULATION OF MERCHANDISE IN WAREHOUSE

\*    \*    \*    \*    \*    \*    \*

The section in the present law provides that when merchandise is withdrawn from a manipulating warehouse for consumption, payment is to be made of the duties accruing thereon "in its condition at the time of withdrawal." Some uncertainty has arisen as to the intended scope of the word "condition"—*that is, whether changes in quantity, in weight, and in value* are to be taken into consideration. Your committee believes that the section should be clarified in this respect and has proposed an amendment to provide that the duty shall be based upon the condition, quantity, and weight of the merchandise at the time of withdrawal from warehouse. It is further provided that the appraised value of the merchandise is to be adjusted to take account of changes in condition as a result of manipulation. [Italics supplied.]

\*    \*    \*    \*    \*    \*    \*

The alleged warehouse manipulation of the instant importation— liquor—did not involve any reconditioning or repacking which changed its dutiable status or increased or decreased its quantity or weight. Only 528.6 gallons were repacked. The remaining quantity, 435.63 gallons, was not repacked or changed in quantity or weight. Section 562 would be warrant for the conclusion that if repacking of these goods changed their duitable status, or decreased or increased their quantity or weight, consideration might be given thereto.

In the face of the mandatory provisions of paragraph 813 and the language used in section 563, it seems obvious that Congress never, by section 562, intended the controversial provision to relate to anything

except that which had been actually "cleaned, sorted, repacked, or otherwise changed in condition." In my mind, this construction of the provision of section 562 in no sense runs counter to the force and effect of the provisions of paragraph 813 and section 563.

For reasons before stated, I concur in the result reached by the majority.

HATFIELD, Judge, specially concurring.

I concur in the conclusion reached in the opinion written by Judge Jackson. I do so, solely on the theory that, so far as the record discloses, appellee's application to repack the whisky here involved was made to the Collector of Customs for the purpose of safety and preservation. The application having been made to the collector, it is immaterial whether he referred the matter to the Secretary of the Treasury or to some other customs official for consideration. The decision permitting the repacking of the whisky for safety and preservation was the decision of the collector, and not that of the Secretary of the Treasury or any other customs official.

Section 562 expressly provides that all merchandise withdrawn from bonded warehouse shall be withdrawn in the original packages in which it was imported "unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same."

Whether the loss of 435.63 gallons of whisky, which occurred in the bonded warehouse, was due to leakage, theft, destruction by fire or other casualty, or in the repacking, does not appear of record. Accordingly, section 563, quoted in Judge Jackson's opinion, has no application to the issues here involved.

The application for repacking having been made to the Collector of Customs solely for the purpose of safety and preservation of the merchandise, it would seem to be clear that the *proviso* contained in section 562 has no application to the issues here involved.

If the Secretary of the Treasury has authority, which I seriously doubt in view of the provisions of paragraph 813 (quoted in Judge Jackson's opinion), to permit the repacking of whisky under the *proviso* contained in section 562, then it would seem to be clear that whisky repacked under the *proviso* is subject to withdrawal for consumption "upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse * * *."

The Congress must have had in mind, at the time of the enactment of the *proviso* contained in section 562, that all merchandise repacked in accordance with its provisions should pay duty only on the quantity, weight, and condition at the time of its withdrawal from warehouse, because not only does the statute expressly so provide, but the report of the Committee on Ways and Means of the House of Representatives

(Report No. 7, to accompany H. R. 2667), relative to the *proviso* contained in section 562, clearly indicates that the Congress so contemplated.

The only assignment of error to this court which is relied upon by counsel for the Government states that the trial court erred "In holding that duty should have been taken upon the involved whisky upon the basis of the withdrawal gauge of 528.6 gallons rather than upon the basis of the entered gauge." That assignment of error is very broad, and, if it raises any question for this court's consideration, it certainly raises the question whether the application for repacking, limited as the application is for safety and preservation of the merchandise, was made to the collector, as the statute expressly provides, or to the Secretary of the Treasury.

For the reasons stated, I concur in the conclusion reached in Judge Jackson's opinion.

I am authorized to say that Garrett, Presiding Judge, concurs in the views herein expressed.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

