(C. D. 306)

Dover Shipping Co., Ltd. v. United States

United States Customs Court, Third Division

(Decided March 21, 1940)

Louis Halle for the plaintiff.

Webster J. Oliver, Assistant Attorney General (Joseph F. Donohue, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: The facts before us presented by the record are rather unusual and interesting. It appears that on May 3, 1932, during the time the Prohibition Amendment was in effect, a British merchant vessel was seized off the coast of New Jersey by officials of the United States Government and charged with illegally attempting to deliver a cargo of liquor to this country. The liquor was placed in the custody of the United States collector of customs on May 6, 1932, awaiting disposition of libel proceedings instituted in the United States District Court for the Southern District of New York. The libel proceedings were terminated on December 12, 1933, by a decree restoring the liquor in question to the claimant and directing that the merchandise be entered and that customs duties and internal revenue taxes be assessed thereupon. We are not concerned here with the libel proceedings, but in passing we might say that from the foregoing it is apparent that between the date of seizure and the termination of the libel proceedings the eighteenth amendment had been repealed and importations of liquor thereby legalized.

In accordance with the order of court the liquor was entered for warehouse on December 21, 1933. The entry papers disclose that entry was made for 128 kegs of fluid malt, 1,600 gallons. On January 10, 1934, the merchandise was gauged by the United States gaugers. The gauger's return was based upon the capacity of the kegs and a fixed allowance was made for outage on each keg. The capacity of the one hundred kegs was found to be 1,365 gallons and the normal outage of 56½ gallons was deducted, making 1,308½ net gallons. The gauger also reported that the 28 kegs were empty and that the capacity thereof was 336 gallons. On November 21, 1934, the entry was liquidated on the basis of the original customs gauge in accordance with section 315 of the Tariff Act of 1930. Admittedly no allowance was made for the absence of liquor in the 28 empty kegs. Before the collector liquidated the entry, inquiry was made by his office as to the

meaning of the words "some slack" and "1 bbl. head out" appearing in a receipt given 3 days after seizure to the deputy surveyor by acting deputy collector. The inquiry appears as follows:

Referring to copy of receipt given by you, seizure #38462, May 6, 1932, please report whether your notation "Some Slack" indicates that there was some merchandise in each of the 128 kegs, and whether the notation "1 bbl. head out" is meant to report that the barrel contained no merchandise. Invoice No. 42306 herewith.

The answer thereto is as follows:

The notation "Some slack" on our receipt for Seizure #38462 means that some merchandise was in each of the 121 kegs. The notation "1 bbl. head out" means that the keg contained merchandise, but that the head of the keg had been smashed. Before gauging in the Seizure Room in December, 1933, the kegs were repacked into full ones and empties under the gauger's supervision.

At the time of liquidation on November 21, 1934, no complaint or protest was made by the importer because of the assessment of duty upon the 28 empty kegs.

Due to the terms of the Canadian Trade Agreement granting importers a lower rate of duty upon liquor, the entry was reliquidated by the collector on April 27, 1938, but prior to that date the merchandise had been withdrawn from time to time from warehouse in the regular manner. The claim is made by the importer that at the time of reliquidation there remained in warehouse only the 28 empty kegs and within the time prescribed by law the importers filed a protest against the reliquidation, claiming it to be illegal because it was based upon the contents of 128 full kegs of liquor when 28 kegs thereof were empty. The substance of the protest may be summed up in the language following:

On said reliquidation, the Dover Shipping Company, Ltd., is being charged with the amount of $2,434.68 for gallonage of malt fluid on said 28 empty kegs. The undersigned protests that error was committed by the Collector of Customs in fixing and claiming duty on merchandise which never existed, was never imported and which never entered the commerce of the United States, and requests that said error be corrected, and that the claim for duties be abated and cancelled, and that the undersigned be relieved of the payment thereof.

At the trial hereof the parties hereto entered into a stipulation of fact, the part thereof concerning the entry of the merchandise reads as follows:

3. Following the termination of said libel proceedings, entry was made of the merchandise involved, as directed by the order of the United States District Court.

4. The 128 Kegs of Malt Liquor were entered as follows:
   100 Kegs containing malt liquor
   28 empty kegs.

5. The report of the United States Gauger, made at the time of entry, shows that 28 kegs were empty when gauged.

6. It is stipulated that the record in United States of America, Libellant, v. 1,571 Bags and 128 Kegs containing Rye and Scotch Whiskey, Brandy and Malt Liquor ex British Oil Screw "WHICHONE" Official No. 157425 DOVER SHIPPING COMPANY, LTD., Claimant, may be incorporated herein, and that all of the papers in the present case may be considered as evidence herein.

7. Plaintiff requests 30 days from date hereof for brief, and defendant 30 days thereafter to reply.

At the hearing, and after the admission of the stipulation and all the papers in evidence, counsel for the Government moved to dismiss the protest as untimely. The motion was taken under advisement and permission given to counsel to present briefs thereupon. Later, to wit, on May 10, 1939, by agreement between the parties hereto, the case was restored to the docket and the entire case, including the motion, was submitted upon the record for all purposes.

The Government, in argument upon the motion to dismiss, contends that the importer's right of protest expired 60 days after the liquidation of November 21, 1934, because it is directed to the quantity of merchandise left in bonded warehouse which was the subject of reliquidation, whereas the identical subject of quantity was passed upon by the collector in his original liquidation.

The plaintiff contends that a reliquidation opens up all errors and mistakes made by the collector on the original liquidation and a refusal to correct such errors and mistakes is subject to a timely protest. Therefore, if the collector refused to take notice of the fact that the 28 kegs purporting to contain liquor were empty and required that duty should be paid thereon, the amount of duty demanded is a question directly involved in such reliquidation and a timely protest as to the amount to be taken in duties may be legally filed.

Questions arising as to the timeliness of protests filed against the exactions of the collector upon goods withdrawn from warehouse have been the subject of many decisions by this. and our appellate court, and have varied in their holdings principally because of the facts pertinent to the particular cases. In view of the position taken by the Government herein, we do not think it necessary to review such decisions. Counsel for the Government agrees that, under the decisions of this and our appellate court, under the laws in tariff acts prior to the act of 1930, the reliquidation of an entry by the collector, by reason of a change in the law, affecting merchandise in bonded warehouse, enabled an importer to file a timely protest upon questions arising under previous liquidations.

Under former acts, the courts have held that where the collector had liquidated an entry while the merchandise was in warehouse and failed to allow for shortage, a protest was not timely when filed upon withdrawal of the merchandise and after demand by the collector for payment of the remainder of duties. See *United States* v. *Andrews*, 14 Ct. Cust. Appls. 62, T. D. 41576. However, if the collector was

required to reliquidate the entries by reason of a change in the law relative to the rate of duties, and a timely protest was filed against the reliquidation, claiming that an allowance should have been made for shortage, the rulings were, in such circumstances, that such a protest would be timely, because the collector could not disregard an established shortage when the merchandise again came before him for liquidation. See *United States* v. *Fensterer & Ruhe*, 12 Ct. Cust. Appls. 410, T. D. 40586.

The Government, however, draws the court's attention to the new language of section 514, act of 1930, providing as follows:

* * * The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

The Government contends that the foregoing section of the Tariff Act of 1930 expressly denies the right of the importer to file a protest against a claim for shortage when the collector had used the gauge of the liquors accepted by the importers without protest at the time of the original liquidation. It is further contended that, under the act of 1930, a question which could have been raised upon the liquidation of an entry may not be raised again upon reliquidation, and that the protest herein seeks to review a decision of the collector not involved in the reliquidation. Therefore, it is argued by the Government that, where an importer is allowed to protest against any new decision made by the collector in reliquidation of an entry, section 514 denies him the right to review a decision which has not been challenged by the importer during the period in which a protest could have been filed and which has not been changed by the collector in his reliquidation.

The plaintiff contends that the new language in section 514 pertains to merchandise in an entry other than the particular merchandise reliquidated and that the language thereof was not intended to deprive importers of their right of protest upon any question which concerned the particular merchandise the subject of reliquidation.

The effect of the new language of section 514 of the act of 1930 has been construed by this court in the case of *Meyer* v. *United States*, T. D. 47437, and by our appellate court in the case of *Woolworth* v. *United States*, 26 C. C. P. A. 157, C. A. D. 10.

In the *Meyer* case certain pimientos were imported and placed in bonded warehouse. The entries were duly liquidated. Within 60 days thereafter the importers protested, claiming that the classification was erroneous in that the merchandise should have been assessed at an ad valorem rate rather than a specific rate, and further that the dutiable weight determined by the collector was excessive. The court held that the merchandise was dutiable at an ad valorem rate rather than at a specific rate and therefore the question of the dutiable weight became immaterial and was not passed upon by the court.

Before withdrawal of the merchandise from warehouse the Tariff Act of 1930 became effective, and the collector reliquidated the entries. By reason of changes in the act of 1930 the specific rate became applicable to the merchandise and was used by the collector in his reliquidation. Within the prescribed time after reliquidation the importer protested, raising the question of the dutiable weight, notwithstanding that the question of the proper weight of the merchandise arose under the act of 1922. In holding that the protest was timely, the court stated that the right of protest was exhausted by the judgment previously obtained, but that right was revived by the action of the collector in reliquidating the entries, as section 514 of the Tariff Act of 1930 permits protest by the importer to be filed against the reliquidation of any entry, and, although it was true that the landed quantities were fixed at the time of the original liquidations, the issue raised by the protests was not one of the quantity imported but concerned what portion of such landed quantity or weight was dutiable.

In the *Meyer* case the importer had challenged the weight used by the collector in his liquidation, but the court directed the collector to reliquidate upon the basis of ad valorem rates. After the act of 1930 became effective, by reason of the language of the paragraph in question, the collector was compelled to again reliquidate upon the basis of specific rates of duty and the dutiable quantity of the merchandise imported not arising in the previous reliquidation was brought directly in question.

In the case of *Woolworth* v. *United States, supra,* the entry included various articles such as rubber play balls, beach balls, tennis rackets, and earthenware. After liquidation the collector noticed that he had miscalculated the duty relative to the earthenware and reliquidated the entry under authority of section 520 (a) (3), pertaining to clerical error, correcting the mistake. He also added 70 cents to the duty on the beach balls, representing 70 per centum of $1. The new exaction therefore amounted to $21.60 plus 70 cents, or $22.30. No change whatever was made on reliquidation in the rate or amount of duty on the tennis rackets. Within 60 days after reliquidation the importer filed two protests, the first contending that the tennis rackets were dutiable at 30 per centum under paragraph 1502 rather than at 70 per centum under paragraph 1513, and the second contending that the beach balls were dutiable at 30 per centum under paragraph 1502 rather than at 70 per centum under paragraph 1513. The Government moved to dismiss the protests as untimely and the trial court in granting the motions stated that "neither the classification nor the assessment of duty upon the rubber balls and tennis rackets was affected by the reliquidation," and that under such circumstances the importer did not have the right to protest and raise questions which he should have raised by protest to the original liquidation.

Upon appeal the appellate court held both protests to be untimely, and in so holding stated:

It is true that the collector on his reliquidation took more duty on the earthenware, which is not involved in these protests but which was a part of the merchandise entered in the entry under consideration. It is also true that he corrected his figures in computing the duty on appellant's entered value of the beach balls and increased the amount by 70 cents. In no instance did he change the classification nor did he do anything else which either of appellant's protests at bar objects to. In each instance the protest objects to the classification under paragraph 1513 at 70 per centum. The goods were not reclassified under any other paragraph or at any other rate in the reliquidation. The collector did nothing more than to correct an error which appeared on the face of the entry. The protests are not directed to these changes made by this correction.

We think that one of the things Congress had in mind when it added the new language in section 514 above quoted was exactly this kind of situation. One of the intended purposes of the legislation was to enable the customs authorities to correct error and leave these corrections subject to protest but not to open up for protest, after the sixty days from the original liquidation had expired, questions which could have been protested within sixty days from the prior liquidation.

In this view we are supported by the following statement found in the report of the Committee on Ways and Means of the House of Representatives when the bill which became the Tariff Act of 1930 was submitted to the House:

Under the existing law, it has been held that a reliquidation opens up the whole entry to protest. It is thus possible for an importer having an entry with a large number of items to protest one item at a time and thereby keep the entire entry from final liquidation indefinitely. Your committee proposes the imposition of a limitation that reliquidation of an entry will not open the entry to protest upon any question not involved in the reliquidation.

In the *Woolworth* case clearly the classification of the merchandise upon which the liquidation was based was not changed by the reliquidation. Questions that arose under the original liquidation could have been protested at that time. By reason of the new language in the act of 1930 such questions may not be raised by reason of a reliquidation performed solely for the purpose of correcting errors. The court, however, goes further than this in the construction of the new language above quoted and positively states that the purpose of the new legislation was—

not to open up for protest, after the sixty days from the original liquidation had expired, questions which could have been protested within sixty days from the prior liquidation.

In the case at bar it may be noted here that no change was made in the original gauge of the liquor involved. True, there has been a change in the rate of duty by reason of the modification of the duty applicable under paragraph 802, through the application of the Canadian Trade Agreement of January 1, 1936, but the amount of duty demanded upon reliquidation is measured by the same gauge used upon liquidation, which had been accepted by the importer, without protest, notwithstanding that the gauger's report showed the true conditions and the amount of liquor actually imported. The

importer slept upon his rights and failed to file a protest against the collector's action upon the original liquidation in which the collector refused to make allowance in duties for deficiency in quantity.

As the basis for the determination of the quantity on which the duty due the Government had been fixed at the time of the original liquidation, we are of the opinion that a change in the law, which merely affords the importer a more advantageous rate, does not operate to revive a right originally granted the importer to litigate the collector's determination in that regard. Inasmuch as the collector failed to disturb his findings upon reliquidation respecting the entered gauge, under the ruling of our appellate court in the *Woolworth* case, *supra*, the question is not open for protest. Therefore the motion to dismiss as untimely is granted.

For the reasons stated, judgment will be entered dismissing the appeal.