(C. D. 643)

Goggi Bros., Inc. *v.* United States

United States Customs Court, Third Division

(Decided June 8, 1942)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Keefe, Judge: This case involves the assessment of duties upon certain barrels of wine placed in a customs bonded warehouse on February 27, 1934. The entry gauge thereof was determined as 944 gallons and the warehouse entry was liquidated by the collector on April 24, 1934, upon the basis of such gauge. On January 25, 1939, application was made by the importer, and granted, for permission to abandon the wine to the Government under the provisions of section 563 (b), act of 1930. After such abandonment and issuance by the Government to the warehouse of the delivery receipt for the same, the collector ordered a regauge and it was found that the 18 barrels contained only 691½ gallons, a shortage from the entered gauge of 252½ gallons.

The collector demanded payment of duty upon the basis of the liquidated gauge, making no allowance for normal evaporation during the warehouse period, and allowing only for the wine actually destroyed. In other words a demand was made for the payment of duty on 252½ gallons of wine at $1.25 per gallon under paragraph 804, which was neither found in the barrels at the time of regauge after abandonment, nor withdrawn from the casks during the warehouse period. The importer claims that the duty determined upon liquidation, because of the abandonment, should be remitted or refunded.

At the trial the importer and the warehouseman testified that the barrels in question were frequently inspected, the last inspection being shortly before abandonment, and no indication was found of leakage of the wine, nor damage to the barrels prior to the time the same had been released to the Government and a "clean-order" delivery receipt, bearing no notations and exceptions, was delivered by the Government to the warehouse. The customs official who regauged the barrels testified for the Government that they were stored in two tiers; that an employee of the warehouse removed the barrels from the top tier, one barrel at a time, and rolled the same less than 50 feet to a position where there was sufficient light and space to open and make a regauge; that when he observed the barrels on the tiers they were apparently in good condition but he noticed some wet sawdust on the floor indicating to him that some of the containers were leaking; that during the time the barrels were being rolled into position for gauging they suffered material damage to the staves and a stream of wine flowed from each barrel as it was rolled along the floor; that the principal damage occurred when the tools were applied to open the bung, the barrels spraying quite freely from the open seams; that in removing the bungs the hoops were loosened; and that the gauging of each barrel took only a few minutes after it had left its original position on the tier. In the opinion of the gauger less than a gallon of wine from each barrel was lost from the gauging operations. This witness also testified that the normal outage for wine in storage during the period of warehousing of the barrels in question would amount to 10 or 11 gallons per barrel. The gauger also admitted that the barrels when in the tiers did not show any indication of leakage; that it was dark in that part of the warehouse and difficult to see clearly and that he did not pay particular attention.

That portion of section 563 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, making provision for abandonment of merchandise in warehouse, is, as follows:

(b) ABANDONMENT.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on

such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

The Customs Regulations of 1937, as amended in T. D. 49658, provide in respect to abandonment, so far as pertinent hereto as follows:

Art. 808. Abandonment or destruction of merchandise in bond.—(a) Applications for the abandonment or destruction of merchandise in bond must be made in writing to the collector by the consignee or his duly qualified representative, and shall be stamped with the date of receipt in the customhouse. When an application is for permission to destroy, the proposed method of destruction must be stated and approved by the collector. Applications to abandon or destroy merchandise in warehouse must be concurred in by the warehouse proprietor.

\*          \*          \*          \*          \*          \*          \*

(c) When, in the opinion of the collector, the abandonment of merchandise under section 563 (b), Tariff Act of 1930, will involve any expense or cost to the Government, or the merchandise is worthless or unsalable, or cannot be sold for a sum sufficient to pay the expenses of sale, the applicant may elect to destroy such merchandise under customs supervision, pursuant to the provisions of section 557, and should be so informed. If the applicant does not so elect, he should be required to advance a sum which, in the opinion of the collector, will be sufficient to save the Government harmless from any expense or cost resulting from such abandonment. The sum so advanced will be placed in special deposit account and expended to cover the cost of destruction or to meet any deficit should the merchandise be sold and the proceeds of sale be less than the expenses of such sale. After meeting such expenses or deficit, any balance remaining will be refunded to the applicant.

(d) Where the above conditions are met, collectors of customs may grant applications without reference to the Bureau of Customs. In any case where doubt exists the case should be referred to the bureau for instructions.

Art. 809. Disposition of abandoned merchandise and proceeds of sale.—Sale of abandoned merchandise will be made in accordance with the provisions of chapter XVIII so far as applicable. No part of the proceeds shall be returned to the importer. After paying, first, the expenses of sale, and, second, carriers' liens for freight, charges, or contribution in general average, the net proceeds, if any, shall be deposited under "Miscellaneous Receipts from Customs." *If the abandoned merchandise or any part thereof is entirely worthless,* or if the expenses of sale *probably would exceed the proceeds, the merchandise shall be destroyed or otherwise disposed of as the collector may direct, but no abandonment claim relating to such merchandise shall be certified by a customs officer who has not satisfied himself as to the quantity of the abandoned portion of the shipment and that the entire quantity of the goods covered by the collector's instructions as to disposition has been actually destroyed or removed from the control of the claimant so that there is no possibility of its being made the subject of another claim.* [Italics not quoted.]

The importer contends that duty is not assessable upon any portion of the merchandise because the wine in the original casks had been abandoned to the Government, and, alternatively, that inasmuch as wine is subject to a normal evaporation of 10 gallons per barrel during the period of the warehousing herein, an allowance should have been

made for such outage under the customs regulations and established practice in the trade.

The Government maintains that the protest should be dismissed as untimely as the entry was liquidated on April 11, 1934, and protest was not filed until November 18, 1939, for the reason that the statute grants a period of 60 days after liquidation for the filing of protests; that a subsequent demand by the collector for the unpaid balance of duties is not such a demand or decision from which an importer may file a protest; and that the importer is prohibited under the express provisions of paragraph 813 from obtaining an allowance for loss of wines resulting from breakage, leakage, or damage. In support of its motion for dismissal, the Government relies upon the decisions of our appellate court in the case of *United States* v. *Andrews*, 14 Ct. Cust. Appls. 62, T. D. 41576, and *Walker* v. *United States*, 25 C. C. P. A. 189, T. D. 49293; and in support of the collector's demand for the payment of duties upon the portion of wine not found by the gauger upon the regauge of the merchandise after abandonment, the Government relies upon the case of *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. 135, T. D. 43470.

In our opinion, neither of the decisions relied upon by the Government as authority for the dismissal of the protest as untimely is in point in the situation here before us. In the *Andrews* case, *supra*, the appraiser discovered that a packing case invoiced as containing 80 pieces of pongee silk was in bad order and that 9 pieces were missing at the time of entry. The merchandise had been entered for warehouse and the entry was subsequently liquidated upon the basis of the invoiced and entered quantities. Thereafter the packing case in question was withdrawn from bonded warehouse for exportation and was actually exported in its imported condition. The collector demanded payment upon the basis of the liquidated duties upon 9 pieces of silk which were neither imported nor exported, an allowance in duties being made for the actual quantity exported. The importer filed a protest against the collector's demand for the payment of duties upon the 9 pieces of silk. The only question before the court in that case was whether the demand for duties upon the silk not exported was subject to protest. The court held that it was the duty of the importer to protest the action of the collector in liquidating the duties upon the merchandise upon the basis of a greater quantity than reported by the appraiser as being imported within the time prescribed by law and that the collector's demand for the payment was nothing more than a communication to the importer in the course of the administration of the business of the collector's office for payment of duties upon the basis of the entered quantities, which had not been previously questioned, and that such communication could not be regarded as "exactions of whatever character," against which pro-

tests were authorized under paragraph N of the Tariff Act of 1913. There the quantity exported was the dutiable quantity inasmuch as duty had been assessed upon a larger quantity than imported without objection, and since the time of entry the condition then existing had not been altered through any change in the law or fact. The importer's right of action in that case arose at the time of importation, and when the collector liquidated the duties upon merchandise not imported, the importer should have availed himself of his right within 15 days as granted by the law. Having failed to do so, the right could not again be revived.

In the *Walker* case, *supra*, certain whisky was gauged at the time it was entered for warehouse. Shortly thereafter the collector liquidated the entry upon the basis of the gauger's return of quantity. Two years later the whisky was regauged at the request of the importer and the gauger found a quantity considerably less than that reported upon the first gauge. It was established that the difference in quantity was due solely to evaporation. The whisky was then withdrawn for consumption and the collector demanded payment of the balance of duties equalling the difference between the entered gauge and the gauge upon withdrawal. Protest was filed against the liquidation and assessment of duties. The court held that Congress intended that the amount of duties on distilled spirits should be based upon the quantity thereof at the time of entry, except where otherwise specifically provided for, and therefore, as there was not any protestable right accruing after the evaporation, no change of facts existed. Consequently a protest filed after 60 days from the original liquidation would be untimely. In this connection, in the case of *Dover Shipping Co., Ltd.* v. *United States,* C. D. 306, 4 Cust. Ct. 135, this court held that where a reliquidation was made reducing the duty upon certain liquors in warehouse by reason of the terms of the Canadian Trade Agreement, a protest filed against such reliquidation, claiming that the collector assessed duty upon merchandise never imported, was held untimely, inasmuch as the quantity of liquors imported was in issue at the time of the original liquidation and was accepted by the importer without protest. This court there stated that issues which could have been raised at the time an entry was originally liquidated may not be opened up for protest by reason of a reliquidation which failed to disturb the collector's previous determination in respect thereto, and cited as authority the case of *Woolworth* v. *United States,* 26 C. C. P. A. 157, C. A. D. 10.

The dutiable status of the merchandise before us has changed since it was originally entered for warehousing by reason of the importer's abandonment under the terms of section 563 (b), *supra*. Such change in the facts relative to the dutiable status of the merchandise.

brings the original liquidation again before the collector for a recomputation according to the changed status. Therefore the original liquidation may not be regarded as the last decision of the collector as to the amount of duties owing the Government from which a protest may be filed. The collector, in demanding payment of duties which had never accrued upon the contents of the 18 barrels herein, has made a decision in respect thereto against which a protest may be filed under the provisions of section 514.

It will be noted here that in the case of *Standard Oil Co. of Louisiana* v. *United States*, C. D. 199, 3 Cust. Ct. 39, involving the timeliness of a protest against the imposition of a tax upon merchandise which was in a warehouse at the time of liquidation and withdrawn in accordance with the customs regulations under the provisions of section 630 of the Revenue Act of 1932, as fuel supplies for a vessel, the court, in overruling a motion to dismiss because the protest was not filed within 60 days after the liquidation of the entry, stated:

It should be noted that the demand referred to is not an ordinary demand for the payment of duties following liquidation, but is in effect a determination by the collector that the dutiable status of the merchandise has not changed by reason of withdrawal thereof and exportation or lading as supplies.

Also in the case of *Shaw* v. *United States*, T. D. 38664, G. A. 8418, certain liquors, imported and entered into a bonded warehouse, were withdrawn for export in the original packages, intact, without any of the contents having been removed. The duties chargeable upon the imported liquors had been liquidated some time before withdrawal. When withdrawn a regauge was taken and an excessive outage found. The collector demanded duty upon the difference in quantity between the entered gauge and the regauge. Motion was made to dismiss the protest as untimely because it was not filed within the prescribed time after liquidation of the entry. The court denied the motion to dismiss because, using the language of the court:

it was filed within 15 days from the time the collector finally determined the question as to what duty should be paid and what was free of duty. Until the exportation entry was filed, expressing the determination of the importer as to the purpose of withdrawal, there could not be a definite and final adjustment of the amount of duty assessed.

In that case the difference between the entered and withdrawal gauge was due solely to evaporation. The court held that the collector erred in collecting duty on the wantage appearing on the withdrawal gauge.

The foregoing decisions establish that where the collector issues a new decision as to the amount of duties due the Government upon merchandise in its original containers because of some change in the facts or the law, a protest against such decision, properly filed under section 514, is held timely. For the reasons stated, and following

the decisions cited, Government's claim that the protest is untimely is overruled.

The merits of the case are clearly upon all fours with the controversy decided by our appellate court in the case of *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, as relied upon by the importer, and are distinguishable from the facts before the court in the case of *Scherk Importing Co.* v. *United States*, 17 C.C.P.A. 135, T. D. 43470, cited by the Government as governing the issue herein.

In the *Scherk* case, certain merchandise remained in warehouse until it was sold by the collector under the provisions of section 559 of the Tariff Act of 1922. Insufficient funds were provided through the sale to pay the amount of duties as liquidated, and demands were made upon the importer for the deficits. The importer filed protests against such demands. The Government claimed that the protests were not timely. However the court failed to pass upon that question. The importer contended there that a liquidation cannot be made of entries where the goods are abandoned and the Government is compelled to take the proceeds of the sale of the abandoned goods and be satisfied.

Section 559 of the Tariff Act of 1922, then in effect in respect to abandonment of goods in warehouse, provides as follows:

Merchandise remaining in bonded warehouse beyond three years from the date of importation shall be regarded as abandoned to the Government and be sold under such regulations as the Secretary of the Treasury shall prescribe, *and the proceeds of sale paid into the Treasury,* as in the case of unclaimed merchandise covered by section 493 of this Act, *subject to the payment to the owner or consignee of such amount, if any, as shall remain after deduction of duties, charges, and expenses.* [Italics not quoted.]

It will be noted that the foregoing language clearly indicates an intention that the duties and other charges relative to the merchandise were to be deducted from the proceeds of sale rather than to be remitted or refunded. Consequently the lien against the merchandise for duties chargeable was not to be disturbed because of abandonment and sale.

The court recognized this fact when it stated:

We are of opinion that all the questions as to the legality of the liquidations of the warehouse entries raised here might have been made the subject of protest at those times, and, no protests having been filed, the appellant is concluded as to his right to protest under said section 514, *unless the subsequent proceedings may be considered as such an exaction by the collector as will give the appellant a further right to so protest the same.* [Italics not quoted.]

The court concluded that the subsequent proceedings were not of such character that the demand for the balance of duties owing upon the merchandise would be in the nature of an exaction, and it was held that the demand upon the importer for the duties was nothing more

than a communication to the importer in the course of the administration of the business of the collector's office.

The abandonment of merchandise for sale under the act of 1922 in no way disturbed the duties assessed upon imported goods. Whether so abandoned or not, the importer was liable for the duties. Section 563, *supra*, provides however that where warehouse goods are abandoned to the Government, the duties shall be remitted or refunded.

Under the act of 1922 the subsequent proceedings of abandonment did not affect the payment of duties, whereas abandonment of the merchandise under the act of 1930 directly affects such duties. Therefore the *Scherk* case, *supra*, related to proceedings entirely different from the controversy now before us, and the court's decision in that case is not in point here.

Articles 808 and 809 of the Customs Regulations of 1937, *supra*, it will be noted, provide that if abandoned merchandise is destroyed without the importer's consent, prior to such grant of abandonment by the collector, he should require that a sum of money be advanced sufficient to relieve the Government of any expenses attending the destruction, or if the merchandise is to be sold, prior to such grant of abandonment, the collector should require a sum sufficient to meet any deficit in the expenses of sale and any balance thereof would be returned to the importer. The only safeguard provided by the regulations is that the collector shall satisfy himself that the entire quantity of goods has been actually destroyed or removed from the control of the importer. Inasmuch as the collector consented to the abandonment, it must be presumed that he acted in accordance with the foregoing regulations.

In the *Casazza* case, *supra*, the controversy was much the same as that now before us. There certain wine, entered for warehouse and the duties thereon liquidated by the collector, was the subject of an application filed by the importer to have the same destroyed under section 557 of the Tariff Act of 1922, it being conceded that no wine had ever been withdrawn from the containers. The collector ordered a regauge of the wine, destroyed what remained, and called upon the importers to pay duties upon the amount represented by the difference between the amount actually destroyed and that originally imported in these particular casks. The importers filed their protest against the decision of the collector, and contended that it is to be presumed that the Government had in its custody what was originally delivered to it and when the Government destroys what it has, then the importers have done all they can do and should be discharged as to their bond. Upon behalf of the Government it was contended that the obligation can be canceled only to the extent of the goods remaining in its hands at the time of destruction and it can not make allowance therefrom because of the provisions of para-

graph 812, act of 1922 (correlative to paragraph 813, act of 1930, raised by the Government in the instant case as prohibiting an allowance for loss). In respect to paragraph 812 the court stated:

*It must appear, on inspection of said paragraph 812, that this provision* was formulated by Congress for the purpose of taking care of losses which might occur in transporting the goods into the country, and *was not intended to apply to losses in bonded warehouse.* Section 563 is a provision for an abatement or allowance to be made upon duties which are collected or may be collected, and presupposes a withdrawal of the goods for some purpose. It is not easy to see how this provision may be held to apply to cases where the goods are not withdrawn, but are destroyed and where no duties ever accrue. For, if the goods are in bond, and never withdrawn, and are destroyed under section 557, then no duties ever accrue against them. There is an obligation upon a bond, which obligation becomes canceled upon the destruction of the goods, and nothing more. [Italics not quoted.]

In the act of 1922, section 557 provided in respect to destruction of the goods in warehouse as follows:

Merchandise entered under bond, under any provision of law, may be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, *and the consignee relieved of the payment of duties thereon.* [Italics not quoted.]

Under the abandonment portion of section 563, act of 1930, any duties on abandoned merchandise may also "be remitted or refunded." Both sections relieve the importer from payment of duties upon merchandise not entering the commerce of the country. Therefore the rule announced by the court in respect to merchandise destroyed under section 557, *supra,* is equally applicable to merchandise abandoned under the provisions of section 563 (b), *supra.* Our appellate court in the *Casazza* case, *supra,* in holding that no duties were applicable to a quantity of merchandise determined by the difference between the entered gauge and the gauge at the time of destruction, succinctly stated as follows:

*We can not escape the conviction that the procedure adopted here by the collector is not doing complete justice to these importers.* The collector did not regauge the wine when he reliquidated under the Tariff Act of 1922, but took the original gauge as correct. Upon what theory, then, can he justify his act in regauging it before he destroyed it? *If the gauge is good for duty purposes, when money is to be taken from the purse of the importers, why is it not good when the importers seek to abandon and destroy their goods? Our customs laws, necessarily highly technical and calling for a close construction, are also intended, so far as may be possible, with due regard for the purposes for which such laws are enacted, to be just and fair. We have, on several occasions, suggested that all the Government ought to seek and obtain, is the duties which justly accrue, according to law, upon the goods which enter into the commerce of our country. Here the importers did all they could to comply with the law, and their bonds should have been canceled upon the destruction of their goods by the collector.*

\*        \*        \*        \*        \*        \*        \*

In this connection it may be suggested that, if the wine in question had been imported in bulk and withdrawals had been made from the entire amount, then a different question might be presented. *But here the original packages imported*

*were intact and identified. They had been continuously in customs custody and, if there was a wantage above the ordinary allowance, it could not be attributed to any act of the importers.*

Following the *Casazza* case, *supra*, for the reasons heretofore stated, we hold that the provisions of paragraph 813 denying an allowance for loss has no application to losses occurring in warehouse, and that the collector's decision demanding the payment of duties upon the wantage, shown to have been the result of leakage or evaporation, was unwarranted under the law.

Judgment will therefore be entered in favor of the plaintiff, directing the collector to reliquidate the entry and make refund of all duties taken.